CALEB PENDARVIS, ADMINISTRATOR, V. FRANK GRAY.

1. FRAUD—CANCELLATION OF DEED.—That the vendor represented that the land sold was upon a certain creek, the purchaser wanting to buy the land for a stock ranche, which was known by the vendor, when, in fact, the land was not upon that or any other creek, had no water on it, and was worthless for a stock ranche, is sufficient ground to set aside the sale at suit of the vendee, although the vendor made the statement in ignorance of the truth, and had been unwilling to enter such description in the warranty clause of the deed.

2. WHEN EXCEPTIONS CONSIDERED AS WAIVED.—Exceptions to the admission of evidence, though properly taken, when not noticed in a motion for new trial nor in assignments of error, will be regarded as waived.

APPEAL from Bell.    Tried below before the Hon. J. P. Osterhout.

On the 3d day of April, 1871, Frank Gray, desiring to establish a stock ranche in San Saba county, purchased from Henry Pendarvis the Carl Weise 640-acre survey, for which he paid $640. The record discloses that, previous to Gray's purchase, he had been in San Saba county, and finding a tract of land which suited him crossing Cherokee creek, and having certain improvements upon it, he was informed by the witness White that Henry Pendarvis claimed to own it; that he then inquired of Pendarvis, who told him it was his tract, and took him and the witness N. C. Edwards to a map on which Cherokee creek was delineated, and, pointing to a bend of the creek, stated that it was the exact locality of his land; that relying upon the integrity and representations of Henry Pendarvis, he purchased the land and paid him his price for it; that upon going upon the land afterwards to occupy it, he found that Pendarvis had no title to the land intended to be purchased, and that the tract owned by Pendarvis, and which his deed conveyed, was utterly worthless. Upon the discovery of these facts he endeavored to get Pendarvis to rescind the trade, and, upon his refusal to do so, instituted this suit

against him on the 23d day of September, 1871.    Henry
Pendarvis dying pending the suit, Caleb Pendarvis, his
father and administrator, became a party defendant.

Trial, verdict, and judgment for plaintiff at the March
term, 1873.

The first instruction asked by appellant, the refusal to
give which is assigned as error, is as follows: "When par-
ties have deliberately put their agreement into writing in
such terms as import a legal obligation, without any un-
certainty as to the object or extent of such engagement, it
is conclusively presumed that the whole engagement of the
parties, and the extent and manner of their undertaking,
was reduced to writing, and all oral testimony of a pre-
vious colloquium between the parties, or of conversations
or declarations at the time when it was completed or after-
wards, as it would tend in many instances to substitute a
new and different contract for one which was really agreed
upon, to the prejudice possibly of one of the parties, can-
not be admitted to affect the written contract between the
parties."

*McGinnis & Lowey*, for appellant.

*Peeler & Fisher*, also for appellant.

*X. B. Saunders*, for appellee.

DEVINE, ASSOCIATE JUSTICE.—Appellee brought suit in
the District Court of Bell county, at the October term, 1871,
against Henry Pendarvis, alleging that he purchased, in
April, 1871, from Pendarvis six hundred and forty acres
of land on Cherokee creek, in San Saba county; that de-
fendant falsely represented the creek to run through the
land; that it embraced a fertile valley, was every way suit-
able for a stock ranche, and embraced certain improvements,
&c.; that these representations were false and fraudulent;
that the land was unfit for a stock ranche, and that it was

not on or connected with the creek or any water. Plaintiff prayed for a judgment rescinding the contract, and for recovery of the amount of purchase money paid, with interest.

The defendant answered with a general denial, and among other defenses set up the fact that, before selling the land, he, defendant, stated to plaintiff that if he would delay the trade and give him time he would have the land surveyed and the corners designated and marked, by which plaintiff could ascertain for himself the position of the land; that plaintiff would not consent to the postponement of the trade, but insisted on consummating the trade for said land, which was done by defendant making plaintiff a deed for the land, receiving from him six hundred gold dollars, &c.

At a subsequent term of the court, the death of defendant being suggested, his administrator (appellant) having been made a party, there was a trial, and a verdict for plaintiff for the amount of purchase money and interest, with cancellation of sale, and judgment accordingly. A motion by appellant for a new trial being overruled, the case on appeal is presented for our revision on the following assignments of error:

"1st. The court erred in the instructions given to the jury, by which the jury were misled.

"2d. The court erred in refusing to give the instructions requested by the defendant.

"3d. The verdict of the jury is contrary to law and unwarranted by the evidence."

The facts detailed as evidence show conclusively that plaintiff intended the land, when purchased, for a stock ranche; that he required a tract with water upon it; that he believed the tract purchased had water (Cherokee creek) upon or running through it, and that it contained a valley on the creek of good land. The evidence further shows that the tract is not on "or near the creek," being several hun-

dred yards from it; that it has no water on it; that it is
worthless. The evidence shows that the sale was made and
money paid in April, 1871, and this suit brought in Octo-
ber of the same year. The evidence does not sustain the
charge that defendant's intestate acted with the fraudulent
intent to deceive or overreach the plaintiff. There is evi-
dence, however, that plaintiff made the purchase mainly
on the representations of defendant that the land was on
Cherokee creek, in San Saba county. The fact that de-
fendant may have (and it is believed did) innocently re-
presented the land to be on Cherokee creek still leaves
him liable for the legal consequences of his statements.
They are the same as if they were made with the intention
to deceive. (Haldeman *v.* Chambers, 19 Tex., 1.)

Under the head of mistake, Mr. Story says: "There is a
very striking case coming under the head of mutual mis-
take, where the vendor of land, in pointing out to the pur-
chaser the boundaries of the land which he proposed to
sell, innocently represented it as being in a different place
from that in which it in fact was, and as being of a different
quality and value from the truth. The court set aside the
purchase made on the faith of these statements. although
not fraudulently made." (1 Story's Eq. Jur., 129.) The
same author, under the head of actual fraud, p. 199 of
same work, states the rule as to what would be considered
fraud, and would entitle a party to relief, "Not but that
misrepresentation, even in a matter of opinion, may be re-
lieved against as a continuance of fraud in cases of pecu-
liar relationship or confidence, or where the other party
has justly reposed upon it, or has been misled by it." In
this case the evidence, we think, shows that the plaintiff
reposed confidence in and was misled by the statements of
his vendor. The price paid, the evidence of the witness
Edwards as to the statements of the vendor, and particu-
larly as to the explanation given for his erasure of the
descriptive words in the warranty clause of the deed,

prove this. The evidence of the surveyor of San Saba county, and of the witness White, residing in the vicinity of the land sold, prove alike its position as regards Cherokee creek and its utterly valueless character as a place for a stock ranche.

The record shows that suit was brought for a rescission of the sale at the first term of the court after the purchase was made; and we think these facts and the law applicable thereto justified, on the plainest principles of equity, a cancellation of the deed, a rescinding of the contract, and a return of the purchase money with interest. This leaves the parties in the position in which they stood towards each other before the sale was completed; the estate of Henry Pendarvis receiving back the land as he sold it; the plaintiff receiving back his purchase money with interest. It is true the evidence of the district clerk (Leach) shows that Henry Pendarvis desired the trade to be postponed until he could have a survey of the land made, the corners marked, and its true position ascertained, and that he so informed plaintiff, but that plaintiff desired the consummation of the trade without delay. The witness Edwards contradicts this statement; says he did not hear it, and "he is satisfied if anything of that kind had been said he would have heard it." This conflict of testimony it was the province of the jury to examine and decide upon. They have done so. Having decided, and there being evidence upon which their verdict can rest for its support, we do not believe that it is our duty to interfere with the verdict, and we see no error in the finding.

We do not find any error in the charge of the court; neither was there error in refusing to give the instructions asked for by defendant. The point was inapplicable to the pleadings and evidence of this case. The charge was fraud and misrepresentation by defendant, and evidence was admissible to show what was said before and at the time of the trade. All of the law applicable to the case

contained in the second instruction asked by defendant had been given in the general charge of the court. If the charge of the court is open to objection and strict criticism, it is on the ground of being more favorable to the defendant in its last paragraph than the facts warranted.

A bill of exceptions was taken during the trial to the admission of the plaintiff as a witness on his own behalf. There was manifest error in admitting the plaintiff to testify in his own behalf. Under the act of 19th May, 1871, (Pas. Dig., art. 6827,) no right is given, but there is an absolute prohibition against plaintiffs or defendants being allowed to testify in suits against executors or administrators, as to any transaction with or statement by the deceased, "unless called to testify thereto by the opposite party, or required to testify thereto by the court."

How far this statement of plaintiff may have influenced the jury we cannot say; but the objection raised in the exception was not referred to in the motion for a new trial, and it is not assigned as error. It not being assigned as error, it must be considered as waived; and, according to rule 22d of this court, (32 Tex., 812,) it will not be noticed. (Pas. Dig., art. 1581; Steen v. The State, 27 Tex., 88.)

There being no error in the judgment, it is affirmed.

AFFIRMED.