J. AND J. JACKSON ET AL. V. P. L. PALMER ET AL.

1. MORTGAGE—EXECUTORY CONTRACT.—When a deed absolute on its face is made for land, and at the same time the purchaser executes a mortgage to the vendor, which on its face shows that it was made to secure the unpaid purchase-money note, the superior title remains in the vendor, entitling him to recover possession in default of payment, although the purchase-money notes are barred by limitation. The fact that the mortgage included other property than the land conveyed, does not affect the principle.

2. PURCHASER — NOTICE — LACHES — PLEADING.— Although the purchase-money notes given for land are barred by limitation, the vendee of the purchaser who buys from one whose title is dependent on pay-

ment of the purchase-money, and having notice thereof, cannot resist the recovery of the land by the original vendor, the purchase-money remaining unpaid. In such a case, equitable rights growing out of the laches of the original vendor cannot be considered unless pleaded.

APPEAL from Liberty.    Tried below before the Hon. Edwin Hobby.

Suit begun May 15, 1873, by John and James Jackson, as executors of Hugh Jackson, deceased, joined by John Jackson, Jr., James Jackson, Jr., Decandia Barrow and her husband, Solomon Barrow, (the last four, save Solomon Barrow, being the children of Hugh Jackson and Elizabeth Jackson, deceased, and their sole surviving heirs and legatees,) in trespass to try title, in the District Court of Liberty county, against Pinckney L. Palmer, for twelve-acre lot number 3 in block 19, in the town of Liberty, Palmer being then in possession of the lot, and claiming under a deed from William C. Abbott, vendee of the executors, who, acting under the will of Hugh Jackson, had previously—June 9, 1856—conveyed the same to Abbott.

The petition alleged, amongst other things, that the lot and improvements constituted the homestead of Hugh Jackson and family at the date of his death, on the 12th of October, 1854, and remained such until after the death of his wife Elizabeth, which occurred in May, 1856; that Hugh and Elizabeth, at the dates of their deaths, respectively, died seized and possessed of the property; that in pursuance of item 4 of the will of Hugh Jackson, the executors, after the death of Elizabeth, sold and conveyed the property to William C. Abbott on the 9th of June, 1856; that Abbott agreed and promised to pay to the executors the sum of $1,500 in three installments of $500 each, evidenced by three promissory notes executed on and bearing same date with the day of sale and deed of conveyance to him, one of the notes being made payable to the executors twelve months after date, another twenty-four months after date, and the third thirty-six months after date; that on the same day of sale and conveyance to Abbott, in accordance with the terms of sale, to secure the purchase-money of the lot, Abbott exe-

cuted his mortgage of the lot, together with some other property therein mentioned, whereby he reconveyed the lot to the executors, and "thereby reinvested them with the legal estate and title," subject, however, to be defeated by the payment of the purchase-money; that both the deed of conveyance to the executors and mortgage by Abbott back to them were part and parcel of the same transaction, executed on the same day, and they were both proven up for record and filed and recorded together in the county clerk's office of Liberty county on the day of their execution. It further alleged that the vendor's lien upon the lot was expressly reserved by the vendors in making the sale to secure the payment of the purchase-money; that afterwards, Abbott, without having paid the purchase-money, save the first of the three notes, conveyed the lots and improvements to Pinckney L. Palmer by warranty deed, and died insolvent; that Palmer had both actual and constructive notice at the time of his pretended purchase from Abbott that the purchase-money had not been paid, and that the superior title to the premises was yet in the petitioners; that Abbott in his life-time, and his legal representatives since his death, in September, 1863, failed and refused to pay the balance of the purchase-money, and wrongfully prevented the foreclosure of the mortgage, though often requested; that of all these facts Palmer had full knowledge, and, therein fraudulently combining with the legal representatives of Abbott to defeat the rights of petitioners, ejected them from said premises in January, 1871, and since then has wrongfully withheld possession thereof to petitioners' great damage, &c.

The petition further alleged the minority of the children of the said Hugh and Elizabeth up to within two years of the filing of suit; that all the property belonging to the estate of decedents had been fully administered, debts paid, and partition had among said children, save the lot in controversy, which, it was averred, belonged, both in law and equity, to them as heirs and legatees aforesaid, unless and until the purchase-money therefor be fully paid according to the con-

tract of sale to Abbott, with which Palmer refused to comply; that the premises when sold to Abbott were well worth $1,500, but by reason of use, neglect in repairs, &c., they are not worth exceeding $500; that none of the purchase-money, save the first above-mentioned note of $500, had been paid or in any manner satisfied or discharged; that Abbott and Palmer and their legal representatives have had the use and enjoyment of the premises since the day of sale thereof by the executors to Abbott, and that the petitioners and none of them have ever since the sale had or received any benefit therefrom.

The relief prayed for was, that the claim of Palmer, or pretense of right and title set up by him, to the premises, be annulled and forever barred, unless the purchase-money remaining due and unpaid be promptly paid off and discharged, with the interest accrued, as specified in the promissory notes to petitioners, to the end that the property might be restored in equity to those to whom of right it belonged, namely, the heirs and legatees of Hugh and Elizabeth Jackson; that if the purchase-money be not paid by defendant under the order of the court, then that the lot be adjudged to belong to the estate of decedents or their children, that the writ of possession issue, and that they have judgment for their damages and costs of suit, and general and equitable relief.

In 1874 defendant Palmer died, and after him John Jackson, executor, one of the plaintiffs, and the cause was continued from term to term to make parties, &c. Proper parties being made, (to wit, Palmer's administrator, widow, and children,) and the pleadings of the parties having been amended to conform to the change of parties, the cause came to trial at the September Term of the court, 1879; the defendants answering by demurrer, pleas of not guilty, statute of limitation of three, five, and ten years, *res adjudicata,* waiver of the vendor's lien by reason of the mortgage covering other property than the lot sold to secure the purchase-money, and four years' limitation as to the notes.

To defendants' answer, the plaintiffs interposed a demurrer, which being overruled, trial was had, resulting in verdict and judgment for the defendants. Palmer had actual and constructive notice of the mortgage when he purchased, which was executed and recorded contemporaneous with the deed, and recited that the notes were for purchase-money. From this judgment the plaintiffs appealed.

The plaintiffs' first charge asked, which was refused, and which is referred to in the opinion, was as follows, viz.:

"The deed and mortgage of the 9th of June, 1856, are to be considered together and as one instrument affecting the title of the property as conveyed by the Jacksons to Abbott, and you are instructed as to the legal effect thereof that said instruments operate to vest the superior title in the plaintiffs, and give them the right to recover the lot in controversy in default of the payment of the balance of the purchase-money that the evidence may show to be due and yet unpaid. If you believe from the evidence that the purchase-money promised by Abbott has not been fully paid according to the terms of the sale between him and the Jacksons, I charge you, the law is this: that, with respect to the plaintiffs, all the right or title which Palmer, or his legal representatives or heirs, acquired by the deed to Abbott, of date 12th of January, 1860, was what is styled the 'equity of redemption,' or a right in the nature of an equity of redemption; that is, the right to have a perfect title from the plaintiffs on the single condition of the payment of the balance, if any, of purchase-money that may by the evidence be shown to be due and unpaid."

Other features of the charge complained of will be apparent from a reference thereto in appellants' brief.

*Davis & Sayles,* for appellants.

I. The jury were instructed in the first and second paragraphs of the charge, in effect, that the vendor's lien must be retained or expressly reserved in the deed of conveyance, in order to enable or entitle the vendor to assert his superior right or

equity to the land as against the vendee and those claiming under him. In this there was error. Such lien might be and was expressly reserved by the mortgage executed simultaneously with the deed from the Jacksons to Abbott. (Wallis *v.* Beauchamp, 15 Tex., 305; The Howards *v.* Davis, 6 Tex., 180; Dunlap *v.* Wright, 11 Tex., 597; Baker *v.* Ramey, 27 Tex., 53; Monroe *v.* Buchanan, 27 Tex., 245; McAlpin *v.* Burnett, 19 Tex., 497; Burgess *v.* Millican, 50 Tex., 401; Brush *v.* Ware, 15 Pet., 112.)

II. The court erred in its charge to the jury in this: The third paragraph of the charge plainly implies that the taking of the mortgage by the Jacksons (embracing as it did other property than that sold) was, in itself, the taking such "distinct and independent security" for the purchase-money as *ipso facto* operated to waive the lien of the vendors, regardless of the terms of the mortgage, and the plain intent of the parties as shown by the deed and mortgage, taken and construed together. (Peters *v.* Clements, 46 Tex., 122; Masterson *v.* Cohen, 46 Tex., 521; Price *v.* Lauve, 49 Tex., 83; Burgess *v.* Millican, 50 Tex., 403; Irvin *v.* Garner, 50 Tex., 49.)

III. The court erred in its charge in this: The third paragraph of said charge misled the jury in that the same proceeds upon the fallacy that the plaintiffs were under some obligation to protect the defendants against the consequence of Abbott's bad faith, and the refusal of his administrator to accept the claim preferred therefor and pay the balance of the purchase-money; and further, in that it assumes that if the plaintiffs' right of action or remedy on the mortgage is barred by limitation, then their right to recover possession of the lot is lost. (Estes *v.* Browning, 11 Tex., 243; Roosevelt *v.* Davis, 49 Tex., 463; Keys *v.* Mason, 44 Tex., 140; Clay *v.* Hart, 49 Tex., 438; Black *v.* Rockmore, 50 Tex., 96; Swain *v.* Cato, 34 Tex., 395; Flanagan *v.* Cushman, 48 Tex., 244.)

IV. The court further erred in its charge in this: In the fourth paragraph of said charge it is therein assumed that the deed to Abbott, and the mortgage by him to the Jacksons,

although duly recorded in Liberty county, gave no notice to Palmer of the rights and lien of plaintiffs. (Paschal's Dig., arts. 4988, 4994; Jones v. The State, 13 Tex., 175; 25 Tex. Supp., 256; Chamblee v. Tarbox, 27 Tex., 146.)

V. The eighth assignment, relied on as a proposition, is that the court erred in refusing to give the charge, asked by plaintiffs, marked number 1. (Blankenship v. Douglas, 26 Tex., 228; Hedgepeth v. Robertson, 18 Tex., 871; 13 Tex., 583; Pierce v. Randolph, 12 Tex., 295; Rogers v. Broadnax, 24 Tex., 543; Marsh v. Hubbard, 50 Tex., 208; Mims v. Lockett, 23 Ga., 241.)

VI. The charge of the court was erroneous in this: That it assumed that Palmer, notwithstanding the notice had by him of all the facts, acquired a better title than Abbott himself got from the Jacksons; in other words, that Palmer, in this contest, has superior rights and equities to those which Abbott could assert were he the defendant in the action. (Dunlap v. Wright, 11 Tex., 603; Fraim v. Frederick, 32 Tex., 308; Caldwell v. Fraim, 32 Tex., 326; Williams v. Murphy, 36 Tex., 76; Baker v. Compton, supra, 252; Delespine v. Campbell, supra, 4; Chew v. Barnet, 11 S. & R., 389, 392; Jewett v. Palmer, 7 Johns. Ch., 65; Reed v. Dickey, 2 Watts, 466.)

E. B. Pickett, for appellees. — The third paragraph of the judge's charge, assigned as error by appellants, is, in substance, that when a party sells land and takes a mortgage or other independent security, as upon the land sold and upon other lands he will be considered to have waived the lien; and that if he allows the purchase-money debt and mortgage to become barred, he cannot recover back the property sold from a subsequent purchaser from his vendee for value. This charge is not error. (Baker v. Compton, supra, 252; Story's Eq. Jur., 633, 634, 642, 643, 1520, 1522; Pitschki v. Anderson, 49 Tex., 1; McDonough v. Cross, 40 Tex., 251; Brightman v. Word, 37 Tex., 311; Parker County v. Sewell, 24 Tex., 238.)

GOULD, ASSOCIATE JUSTICE.—The controlling question in this case is as to the legal effect of the sale and conveyance by the executors of Hugh Jackson to W. C. Abbott, and the contemporaneous mortgage given by Abbott to said executors to secure the purchase-money notes for the lot conveyed to him, said mortgage embracing several other lots, the property of Abbott, as well as the lot bought by him.

Our opinion is, that the legal effect of these instruments was to make the contract executory, and that the superior title to the lot remained in the heirs and executors of the estate of Hugh Jackson, entitling them to recover possession, although the purchase-money notes were barred. We see nothing in the fact that the mortgage embraced other property, nor in the language of the mortgage, to take the case out of the rule laid down in Dunlap v. Wright, and in numerous cases following that authority. That rule is firmly established, and its operation should not be rendered uncertain by introducing an exception which seems to us mainly founded on a doubt as to the correctness of the rule itself, and a consequent disposition to limit its effect.

Although the purchase-money notes were barred, the vendees of the purchaser—Abbott having bought from one whose title was dependent on payment of the purchase-money, and having notice thereof—could not successfully resist the recovery of the lot, the purchase-money being unpaid.

If, after resisting the suit for the collection of the purchase-money and the enforcement of the mortgage on all of the mortgaged property, the defendants have any equitable rights growing out of the laches of the plaintiffs, those equities, not having been set up in their pleadings, cannot be considered. It is not seen, however, that they have any equity that will protect them from the legal title of plaintiffs. The plaintiffs occupied to them no such relation as imposed the duty of diligence in the enforcement of their remedies in order to protect defendants.

Because the court erred in refusing the first charge asked

by plaintiffs, and in its charge as given, the judgment is reversed and the cause remanded.

[Opinion delivered January 27, 1880.]