## W. A. HOUTS ET AL. v. JOHN SCHARBAUER ET AL.

Decided June 5, 1907.

**1.—Sale—Rescission—Parties.**

Where the plaintiff sues for a balance due upon the purchase money of land and the defendant pleads in reconvention for a rescission of the sale and for recovery of the purchase money already paid, plaintiff's vendor, who was in no manner implicated in the wrong which is made the ground for rescission, is not a necessary party to the action, although the legal title to the land was in such vendor at the time plaintiff made the sale to defendant.

**2.—Agent as Joint Purchaser—Collusion—Rescission.**

Where an agent who is to receive a commission for effecting a sale of land conceals this fact from one who becomes a joint purchaser of the land with such agent, it is such a fraud upon the purchase as will warrant a rescission of the sale, the vendor knowing of and being a party to the fraud.

**3.—Same—Remedy.**

Under facts as above stated the purchaser may either recover from the agent, a sufficient portion of the commissions received by him to equalize their payments on the land, or he may sue to rescind.

**4.—Same—Lien to Secure Repayment.**

Upon rescission of a sale on the ground of fraud it is proper to secure a repayment of the money paid by the purchaser by a lien on the land.

**5.—Rescission—Joint Purchasers—Fraud as to One.**

Where only one of several joint purchasers has the right to rescind a contract of sale because of fraud practiced upon him alone, he is entitled to a rescission even against the wishes of his copurchasers.

**6.—Joint Tortfeasors—No Recovery Over.**

Where the owner of land and his agent by collusion consummate a fraud upon a purchaser of the land and the sale is set aside at the suit of the purchaser neither the owner nor the agent has any remedy over against the other.

Appeal from the District Court of Jefferson County. Tried below before Hon. W. H. Pope.

*J. S. Wheless* and *Carlton & Proctor,* for appellants.—The verdict of the jury and judgment upon the same failed to restore plaintiffs to the position they occupied before the contracts were made, the pleadings and evidence showing that defendants received certain benefits under the contracts in the way of rents and profits; also that defendants made disposition of parts of the land and received benefits from such sales, not accounted for. The pleadings of the defendants and evidence further shows that the defendants had received all the benefits under the contracts to which they were entitled according to their own contention. Hunt v. Turner, 9 Texas, 385; Womack v. Womack, 8 Texas, 397; Cummings v. Powell, 8 Texas, 88; State v. Snyder, 66 Texas, 698; Chaney v. Coleman, 77 Texas, 100; Clay v. Hant, 49 Texas, 433; Thomas v. Beaton, 25 Texas, Supp., 318; Patrick v. Roach, 21 Texas, 254; Coddington v. Wells, 59 Texas, 49; Hamblen v. Folts, 70 Texas, 134; McCarthy v. Moorer, 50 Texas, 287; Moore v. Giesecke, 76 Texas, 543; Fitzhugh v. Texas-Franco Land Co., 81 Texas, 306.

In a suit to cancel a deed by which land is conveyed to a trustee in the interest of certain beneficiaries, the cestui que trust and the trustee are necessary and indispensable parties. Hudson v. Milling Co., 79 Texas, 405; Boles v. Linthicum, 48 Texas, 220; Saunders v. Howard, 51 Texas, 23; Ebell v. Bursinger, 70 Texas, 120; Preston v. Carter, 80 Texas, 388; Story's Eq. Pl., 207.

A contract made by an agent who occupies a dual relation to buyer and seller is not absolutely void, but voidable only at the instance of those who have entered into the agreement in ignorance of such relation, and the contract can not be avoided or rescinded upon this ground by a party to it who enters into it with full knowledge of the facts. Connolly v. Hammond, 51 Texas, 635; Scott v. Mann, 36 Texas, 164; Kramer v. Winslow, 154 Pa., 637.

If either of the defendants, John Scharbauer or John McElroy were appraised of the fact that their codefendant S. M. Scott was acting as agent for the plaintiffs in making the contracts of sale in this case, and this was made known to them before the contracts were entered into, and with such knowledge they entered into the

contracts and acquiesced in his occupying this relation, such notice to either of them would be notice to both, since the evidence in the case disclosed them to be partners in the transaction. Hamilton-Brown Shoe Co. v. Whitaker, 4 Texas Civ. App., 380; Muse v. Chaney, 30 S. W. Rep., 374; Howell Bros. Shoe Co. v. Mars, 82 Texas, 493; Rider v. Hunt, 6 Texas Civ. App., 238; Kraus v. Haas Co., 6 Texas Civ. App., 665.

*O'Brien, John & O'Brien* and *Cowan & Burney,* for appellees.

JAMES, CHIEF JUSTICE.—W. A. Houts and his wife, J. E. Houts, sued John Scharbauer, John McElroy and S. M. Scott to recover $27,000 and interest from May 3, 1901, as a balance due on the purchase price of 640 acres of land. Plaintiffs found the suit upon three instruments attached as exhibits to the petition, and alleged that by virtue thereof defendants purchased the land for $60,000, one-half of which was paid, and $30,000 payable within a reasonable time with 6 percent interest. That one year after the execution of the deed was a reasonable time, and that defendants had failed to pay same except $3,000 which was credited. That an implied vendor's lien existed for said balance and that plaintiffs had become the owners of said balance by purchase from the other parties who were interested in same.

The three exhibits disclose substantially as follows: The first exhibit, "A," is a contract dated April 23, 1901, expressing the receipt from S. M. Scott and John McElroy, of $6,000 as earnest money to close the sale to said Scott and McElroy of said section, (except 40 acres thereof to be thereafter mutually agreed on) the total price being $60,000, and $24,000 to be paid when an abstract showing perfect title is presented together with a general warranty deed to a trustee to be thereafter agreed on, the conditions of the trust to be as follows: The trustee to convey to various parties designated by Scott and McElroy, upon receipt of $100 per acre to be paid to W. A. Houts until such a time as there has been made a further payment to said Houts of $30,000 with 6 percent interest on said $30,000 or any part of same that is unpaid, all expenses of deeds to be borne by Scott and McElroy. The possession of the property is reserved for the farming season of 1901, the rental to be paid to Scott and McElroy and to be 1-5 of the rice raised on the premises. This exhibit is signed by,

|  |  |
|---|---|
| S. M. Scott, | J. E. Houts, Trustee, |
| John McElroy. | D. Zimmerman, |
|  | W. A. Houts, Agent, |
|  | by W. A. Houts, Agent. |

Exhibit "B" is substantially as follows: An agreement executed by W. A. Houts and by S. M. Scott and John Scharbauer and John McElroy, confirming the preceding contract, and reciting the receipt of the $24,000, and proper abstract, and that all conditions up to date having been complied with, the said W. A. Houts, J. E. Houts and D. Zimmerman deliver a deed unto a trustee duly appointed,

the same being W. A. Houts, he to hold the title in his name for the use and benefit of the second parties, such deed covering the 640 acres, the additional 40 acres being thereby reserved unto the first parties to be selected from the Scott and McElroy subdivision of said section by mutual consent.  Then follows a paragraph defining the duties of the said trustee substantially as provided in exhibit "A." Also provides that W. A. Houts as trustee is to execute quitclaim deed to John McElroy, John Scharbauer and S. M. Scott, conveying all interest as trustee, the deed to be deposited in escrow in the First National Bank of Beaumont to be held until the parties of the first part have received the balance of the purchase money for the land.

Exhibit "C" is the deed, which was dated April 30, 1901, and finally acknowledged May 2, 1901, and executed by "D. Zimmerman, Ann M. Zimmerman, W. A. Houts, Southern Commission Co. by J. E. Houts, President."  The grantors named, D. Zimmerman and wife, Ann M. Zimmerman, of Silvain Springs, Ark., J. E. Houts, Trustee of Southern Commission Company, and the Southern Commission Company, a corporation organized under the laws of South Dakota acting herein by its president J. E. Houts, and J. E. Houts who joins his wife J. E. Houts, he being of the county of Yankton, S. D. Consideration $60,000 "to us in hand paid by W. A. Houts, Trustee, for John Scharbauer, John McElroy and S. M. Scott and J. E. Houts" (the interest of J. E. Houts in the land conveyed is the right to demand and receive $100 per acre out of the proceeds of the first 300 acres sold, with 8 percent interest, and the interest of said Scott, McElroy and Scharbauer being the entire estate in the land after payment of said sum after 40 acres are deeded to W. A. Houts individually).  It conveys the 640 acres, reserving the possession for the farming season of 1901.

Defendants Scharbauer and McElroy answered denying any indebtedness to plaintiffs, and, in substance, claimed that the balance sued for was never any obligation upon them and never was so intended; that it was agreed between the parties and so expressed in the contracts, and if not so expressed it was intended by the parties that defendants were to have two years within which to sell off the land at $100 an acre to pay the balance, and if they failed within that time to do so from the sales, all their rights and interests in the lands should cease and the same be held by W. A. Houts in trust for himself and others, without further acts or conveyances, and alleged mutual mistake in the preparation of the contracts in their failure to express these terms.  These defendants pleaded also in reconvention and averred that in the negotiations leading up to the purchase, their codefendant Scott was acting as agent for plaintiffs under an agreement to pay him a commission of five percent for making the deal; that of this fact they had no knowledge.  That Scott came to them as an investor and offered to go in with them as a purchaser, and relying upon him they acceded to his proposition and they entrusted the whole matter of said contract and purchase to him, and if they had known of his agency they would not have entered into the purchase.  That upon the payment of the $30,000, of which Scott paid

$10,000, that he was paid back $3,000 by Houts for his services. They alleged also that they promptly acted to rescind and repudiate the contracts upon discovery of the relationship of their codefendant to plaintiff; that they had an equity in the land to secure them the return of the purchase money paid by them, to wit, $20,000 and interest, and prayed that a trust in said land for the return of said money be declared, asking judgment against plaintiffs W. A. Houts and J. E. Houts and their codefendant S. M. Scott accordingly.

Scott substantially adopted the answer of said defendants, and asked judgment against plaintiffs for the purchase money $7,000 that had been paid by him, and interest.

Plaintiffs by supplemental petition denied the allegations of defendants; admitted the employment of Scott to sell the land for $100 per acre, and to pay him a commission, but denied the concealment of such fact, and alleged that Scharbauer and McElroy knew, or were charged with knowledge of the fact.

The trial resulted in a verdict against plaintiffs and in favor of Scharbauer and McElroy "upon their plea in reconvention for the sum of $20,000 and 6 percent interest from May 3, 1901, and the foreclosure of their vendor's lien upon the land described in the pleadings. We find against the defendant S. M. Scott on his plea in reconvention and against the defendants Scharbauer and McElroy as to their cross action against S. M. Scott."

The court submitted the issues in the following manner: 1st. To find for plaintiffs against all defendants in the sum of $27,000 with 8 percent interest from May 3, 1901, with foreclosure of vendor's lien upon the land, unless they found from a preponderance of the evidence that at the time of the execution of said contracts there was a mutual mistake as theretofore defined, in that if the contract, as written, had included all the terms agreed upon by the parties that there would be no obligation to pay the $30,000 with interest except out of the sales of the land within two years, and that in the event said sales did not pay said sum within said time, then the land would revert to plaintiffs, and if they so found to find against plaintiffs.

The court instructed the jury further: 2d. That if Scott was the agent of plaintiffs Houts and acting as such under an agreement between himself and plaintiffs, that if he (Scott) should negotiate and make a sale of said land for plaintiffs, he (Houts) would pay Scott 5 percent of the consideration, and that Scott did negotiate with defendants Scharbauer and McElroy and bring about the sale evidenced by the contracts in evidence, and that Houts did pay Scott after the consummation of the sale, said commission, and the jury further believed from the evidence that said fact that Scott was acting as agent for plaintiffs was unknown to said Scharbauer and McElroy, or either of them, and that said defendants within a reasonable time after discovering the fact of said agency and the payment of said commission, repudiated said contract, then that they would find for said defendants in the sum of $20,000 with interest at 6 percent per

annum from May 3, 1901, and a foreclosure of their vendor's lien upon the land.

*Conclusions of Fact.*—We find the following facts developed in the evidence:

That prior to the deed W. A. Houts had an arrangement with Zimmerman to buy his interest in the land and did at or about that time acquire it by deed. That the land had been acquired from the Port Arthur Land Company, the deed being to D. Zimmerman and J. E. Houts, trustee (she being the wife of W. A. Houts). It was shown that W. A. Houts paid all the purchase money to the Port Arthur Land Company, and that the Southern Commission Company had no interest in the land. The result of the testimony is that plaintiff Houts was the owner of the land, at the time of the sale to defendants and at the time of the bringing of this suit.

That the three instruments already described were executed. The fact that he had become the owner seems to have been understood and recognized as he alone signed the final contract as party of the first part.

It was admitted that Scott was the agent of plaintiff to make the sale at the price fixed by his principal, which was $60,000, one-half cash and the balance on time to suit the purchaser, secured with the land. Scharbauer and McElroy testified in substance that Scott did not disclose to them that he was agent of plaintiff to make the sale; that they dealt with him solely as their partner and co-purchaser, that they were advised of the price and terms by him, and he attended to all the details of the deal and that they relied on him in these matters because he was purchasing an interest with them and putting up his part of the purchase money. They denied any knowledge of his agency. Scott testified he thought they knew he was agent, but that he was certain they did not know anything of the fact that he was getting a commission and was not paying as much for his interest as they were paying for theirs. He testified that he and Houts discussing the matter concluded it was the better way for him (Scott) to pay the cash and for Houts to pay him cash, and the reason for this was to avoid allowing McElroy and Scharbauer to know that he was getting $3,000 commission. He testified that he and Houts knew that their knowledge that he was paying him a commission might have affected Scharbauer and McElroy, and that the fact that his going in disinterested gave him greater strength in getting them to take hold.

On the issue of mutual mistake in the omission from the contract of the understanding that the balance was to be paid out of the sales of the land within two years, we conclude there was testimony sufficient to warrant the submission of the issue. With reference to this issue we may add that the finding of the jury on the plea in reconvention, if sustained, would eliminate as immaterial and useless any finding on this issue.

The chief points raised by appellants may be summarized:

1st. That the reconvention, which was based on rescission, was improperly allowed, because parties necessary and proper to the grant-

ing of relief on that ground were not before the court. The absent parties were D. Zimmerman and wife and the Southern Commission Company. The first eight assignments deal with this subject.

2d. That the judgment fails to restore plaintiffs to the position they occupied before the contracts were made, the pleadings and evidence showing that defendants received certain benefits under the contracts in rents and profits, and that defendants made disposition of parts of the land and received benefits from such sales, not accounted for, and further that they had received all the benefits under the contracts to which they were entitled according to their own contention. The sixth assignment deals with this subject.

3d. That the testimony did not warrant a charge submitting as an issue the matter of mistake in the omission, of certain terms from the contracts. This is the subject dealt with by the eleventh assignment.

The other assignments attack the charges, except those which challenge the verdict, as unsupported by evidence, as against the great preponderance of the evidence, as not responsive to the charges, and as unjust, inequitable and unconscionable.

The first of the above propositions we conclude can not be sustained. It was shown by the undisputed evidence that W. A. Houts was the owner of the land, and of the claim sued on, as shown by the conclusions of facts above found. Zimmerman had deeded his interest in the land to W. A. Houts, and it was not necessary that he should have been a party, on account of his interest in the land, for he had none. The same is true of said Commission Company. It is further a contention by appellant that a court of equity could not, without Zimmerman in the case, grant him full relief because in order to do adequate and complete justice, the court should have been put in a position to award him contribution from Zimmerman in this very proceeding, and for this reason the plea for rescission should not have been granted. In the first place, Zimmerman appears from the exhibits to appellants' petition to have been a nonresident of the State, and therefore no citation could ordinarily have been served on him which would have authorized a personal judgment against him. In the second place, it does not appear with any degree of probability that Zimmerman was liable to appellant for contribution. Appellant, it is true, had bought from Zimmerman his interest in this transaction, paying him finally out of the $24,000 payment. But it is not perceived how Zimmerman would be liable to him to refund or contribute on account of a judgment against Houts or Houts's land, growing out of the individual act or wrong of Houts himself. If defendants were entitled to rescission, it was only necessary for them to join as parties, those interested in the contracts at the time of suit, and it would clearly appear to be useless to join parties who appeared to have no interest or who had parted with their interest. Here Houts owned the land and all claim arising from the sale, and defendants did not have to look further than to him to fully accomplish the rescission. The relation existing beween Houts and Zimmerman will be more fully treated under the twelfth and thirteenth assignments.

As to the second of the above propositions: Appellant in his brief in support of the proposition states that Scharbauer, McElroy and W. A. Houts and wife and W. A. Houts, trustee, conveyed to S. M. Scott 40 acres of land on January 12, 1902, and Scott conveyed same to the Export Oil & Pipe Company, and being unable to meet his $3,000 notes that he had executed to W. A. Houts therefor, he had procured the said company to reconvey the 40 acres to Houts. We may refer to the following agreement which appears in the record: "It is agreed that the 40 acres embraced in the deed from W. A. Houts, trustee, to S. M. Scott of date as shown upon its face as introduced in evidence, was conveyed by S. M. Scott to the Export Oil & Pipe Line Company and by that company later conveyed to W. A. Houts who now holds the record title and deed to the same." It is not deemed necesssary to pursue this particular subject further.

It is also stated under this head that one-fifth of the rice crop for 1901 was turned over to the Beaumont Rice Mill with instructions to deliver it to defendants, and that "Scott, who was acting for the other defendants, was advised of this having been done, but it seems that the defendants never went to the mill and collected what was due them." On this matter W. A. Houts testified as to the disposition that was made of the rice crop that he instructed Mr. Broussard of the Mill Company, to remit 4-5 of the proceeds to him and to pay to Scott, Scharbauer and McElroy the balance; and that he did not know whether he followed the instructions and paid them the balance. Scott testified: "Yes, they made a crop, but I never heard of any accounting being made to any one of that one-fifth. Mr. Houts informed me that the rice, or that portions of it went to Mr. Broussard, and I presume it remains there now uncollected. He never gave me any account sales of it." This being all the evidence referred to by appellants' brief on this subject we presume it is all. It does not appear that these defendants were advised of the rice being there for them, nor that they received any of it.

It is further contended that defendants caused a plat of the land to be made showing streets through the same and the sale to the Export Oil & Pipe Line Company was made with respect to such plat. As that 40 acres was reconveyed to Houts and he was owner of the whole land, there was clearly no dedication of streets which he could not iguore.

The leading question in the case, is whether or not the facts in evidence were such as to warrant a rescission. The facts briefly stated are that Scott was the agent for Houts to sell the land, that instead of dealing with Scharbauer and McElroy as such agent, but withholding from them knowledge of that fact and particularly the fact that he had an arrangement with Houts to receive $3,000 commission for his services in affecting a sale, he assumed the attitude of a joint purchaser with them in order to induce them to go into the purchase, and this in fact induced them to go in and commit the whole matter to his management through confidence in him as a bona fide joint purchaser; when

otherwise, if he had declared his true relation, they would not have done so. The procedure was a scheme devised by Houts and Scott, and carried out to success, and when the cash payment was completed Scott received from Houts a check returning him $3,000. The truth was not discovered by Scharbauer and McElroy until shortly before the filing of this suit.

Without doubt Scharbauer and McElroy upon this state of facts might have adhered to the sale and recovered from Scott sufficient to equalize their investment. And Houts being party to the breach of trust involved in said proceedings, he also would have been liable in the same manner. This would have been plaintiff's only remedy if the property could not have been restored. But authorities are numerous to the effect that they also, under the circumstances of this case, had their right to rescind if acting promptly in repudiating the transaction. In a joint adventure of this nature a relation of trust and confidence exists between the members thereof, and the conduct of Scott inspired, or seconded and participated in by Houts his principal, made them both subject to any remedy that equity affords for the relief of those overreached by such collusive conduct. These defendants were induced to pay for their interests at the rate of $60,000 when the price to Scott, their co-purchaser, was $57,000 and in this they were defrauded. The following authorities establish the fiduciary relation between joint investors, and also their right to rescind contracts procured in violation of such relation. 1 Bigelow on Fraud p. 315; Hall v. Grayson Co. Nat. Bank, 81 S. W. Rep., 762; Yale Gas Stove Co. v. Wilcox, 29 Atl. Rep., 303; Seehorn v. Hall, 32 S. W. Rep., 643; Ferguson v. Gooch, 40 L. R. A., 235; Franey v. Warner, 71 N. W. Rep., 85; 1 Morawitz on Priv. Corporations, sec. 293.

We think no authorities are necessary to be cited to show the propriety, in a rescission in this case, of securing the repayment by a lien on the land.

We overrule the seventh assignment which is that the benefits received by these defendants from the contracts make it unjust, inequitable and unconscionable, for them to be permitted to rescind. Also the fifteenth and sixteenth which urge that the verdict is contrary to the testimony, and to the great preponderance thereof.

The ninth assignment is also overruled. Paragraph four of the charge, defining an agent, was a correct statement of the law. We fail to perceive how the charge was misleading in connection with the other charges.

The tenth and eleventh relate to charges on the subject of mutual mistake which, in view of the verdict on the matter pleaded in reconvention, are wholly immaterial, but we think the definition given of mutual mistakes was not erroneous, neither is the position taken by appellant that the testimony did not warrant a charge on mutual mistake, tenable.

Under the twelfth and thirteenth assignments appellant advances a number of propositions. The court charged the jury that if the fact that Scott was acting as agent for plaintiff was

unknown to Scharbauer and McElroy, or either of them, and that said defendants within a reasonable time after discovering the fact of said agency and the payment of said commission, repudiated said contract, then to find for said defendants, etc. The first three propositions also the sixth contend that this charge was error, because if either one of said defendants knew the facts, it would defeat the suit. The relation of Scharbauer and McElroy to each other was that of cotenants, or joint purchasers. If either of them could show the necessary facts to authorize a rescission in his favor, he would nevertheless be cut off from that right if the other was not permitted to join him in a suit to rescind, because of the right of their vendor to be placed in *statu quo* as to the whole property. It would seem that one purchaser having the facts warranting a rescission in his favor against the vendor, ought not to suffer a loss of that right because his copurchaser is not in a position to assert such remedy. If the latter refuse to join in such a suit, as he may do, he may be joined as a defendant and rescission compelled against his will. See note to 18 Ency. Pl. & Prac. p. 796. If this can be done, certainly the same relief will be granted in a case in which he consents to join as plaintiff.

Enough has already been said to dispose of the fourth proposition. Defendants do not appear to have received benefits such as would bar them from this remedy. The fifth proposition is to the effect that Houts in this transaction acted for himself as to an undivided half interest in the land and for Zimmerman as to the other half, and the acts complained of "not being actually tortious," but voidable "merely upon a principle of public policy," Houts, in so far as he was representing Zimmerman, could not be required to refund that part of the money paid to him for Zimmerman. The evidence establishes that Houts previous to these contracts had an arrangement with Zimmerman to buy his interest for a certain price. He testified that in the purchase from the Port Arthur Land Company he had advanced Zimmerman part of the purchase money, some $6,000, and the latter secured the advance by a mortgage. That afterwards Zimmerman told him he believed he could get $10,000 for his interest and at the same time that it was all Hout's money in the property and that he did not feel like saying much about it, and that he (Houts) could handle it to suit himself, but that any time Houts would return him his notes and give him $10,000 he would be very glad. Houts testified that as soon as he got the $6,000 (which was at the time of the first contract) he wrote Zimmerman that he had sold the property and sent him $500 together with the deed asking him to execute it and return it and told him as soon as the deal was closed he (Zimmerman) would receive the balance of his money together with the notes and mortgage, and that if he was unable to close the deal he would take Zimmerman's portion at any rate. That as soon as he got the $24,000 he sent Zimmerman his notes and $9,500 thus fully closing the deal.

It appears from Houts' testimony that he made the sale and

not Zimmerman; that before the first contract he had contracted to take Zimmerman's interest, regardless of moneys derived from the sale, and finally at the time the second contract was made and the $24,000 was paid him, he completed the payment to Zimmerman. Certainly he would have no recourse against Zimmerman by reason of the consequences of his own misconduct in negotiating the sale. Neither can it be said that he received and paid over to Zimmerman, in the latter's character as beneficiary, a share of the proceeds of the sale. He made the payments for himself, in his own interest, and in the execution of his own contract.

As to the fourteenth assignment there was no error committed in charging the jury that if Scott was agent for Houts and also acted for Scharbauer and McElroy in the transaction with the knowledge of Houts, that plaintiff could not recover against Scott unless all the parties named knew of the agency and consented thereto. The rescission destroyed the contracts; all the land was restored to Houts, and this result would necessarily preclude a recovery by Houts against Scott. Besides, the joint wrong committed by Houts and Scott and for which the court set aside the contract, would preclude either from recovering against the other. The court accordingly and correctly refused Scott the right to recover the $7,000 he had paid Houts, and refused Houts the right to recover from Scott upon the contracts which it annulled.

The nineteenth assignment of error is practically disposed of by what occurs above, but this assignment is not briefed so as to entitle it to notice.

The verdict in favor of the reconvention, overrides and pretermits the issue of mutual mistake, and renders it an immaterial subject. Judgment affirmed.

*Affirmed.*