## CARSON v. TAYLOR et al.   (No. 9720.)*

(Court of Civil Appeals of Texas. Fort Worth. Jan. 28, 1922.   Rehearing Denied Feb. 25, 1922.)

1. **Limitation of actions ⬳182(3)—Mines and minerals ⬳59—Limitations and laches to preclude lessees' recovery of consideration paid on ground of fraud must be pleaded.**

   In action, in which lessees sought to recover consideration paid for oil lease on the ground of fraud, the lessor could not avail himself of the statute of limitations or of laches of lessees in asserting claim for relief, where such defenses were not specially pleaded.

2. **Mines and minerals ⬳59—Waiver of right to repudiate lease for fraud must be specially pleaded.**

   In an action involving lessees' right to recover consideration paid for oil lease on the ground of fraud, lessor could not defend on the ground that lessees waived the right to repudiate the transaction by claiming rights under the lease after discovery of the fraud, without having specially pleaded such defense.

3. **Estoppel ⬳110—Defense of equitable estoppel must be pleaded.**

   The defense of equitable estoppel must be specially pleaded.

4. **Mines and minerals ⬳59—Fraud held good defense in lessor's action against lessees for second year's consideration under oil lease.**

   In lessor's action against lessees to recover consideration lessees had agreed to pay during the second year of lease, fraudulent misrepresentations as to existence of productive oil well on the leased premises, by which lessees had been induced to take the lease, and the existence of a fraudulent conspiracy between the lessor and one of the lessees to induce the other lessees to take the lease under agreement entitling such lessee to the return of his portion of the purchase price, without the knowledge of the other lessees, held a good defense available to such other lessees.

5. **Set-off and counterclaim ⬳27(1)—Lessees could file cross-action for consideration paid for lease in lessor's action for second year's consideration.**

   In lessor's action against lessees for second year's consideration under oil lease, in which the lessees defended on the ground that they had been induced to accept the lease by

·fraud, the lessees, in cross-action under Vernon's Sayles' Ann. Civ. St. 1914, art. 1330, could recover on the ground of such fraud, the consideration which had been paid.

**6. Mines and minerals** ⊜⟹59—**Lessees induced to accept lease by fraud entitled to rescind lease and to recover purchase money paid.**

Where three of the four lessees who purchased oil lease were induced to purchase lease by the fourth lessee, who without the knowledge of such three lessees, had secret agreement with lessor entitling him to a return of his portion of the purchase price, the three lessees were entitled to rescind the lease and to recover the consideration paid.

On Motion for Rehearing.

**7. Contracts** ⊜⟹98—**Fraud a good defense to action for enforcement, though defrauded party has alternative right to equitable relief in a suit for cancellation.**

Fraud which induces the execution of a written contract is a good defense to an action at law for the enforcement of the contract, even though the party defrauded also has the alternative right to equitable relief in a suit for cancellation or rescission of the contract.

Appeal from Wichita County Court; Guy Rogers, Judge.

Suit by Charles Carson against C. M. Taylor, J. L. Art, J. C. Straus, and C. B. Woods, in which the three last-named defendants filed a cross-action against plaintiff. Judgment for plaintiff against the first named defendant, and for last three named defendants against plaintiff, and plaintiff appeals. Affirmed.

Aynesworth, Williams & Watkins and Smoot & Smoot, all of Wichita Falls, for appellant.

McDonald & Cummings, Bullington, Boone, Humphrey & Hoffman, and Kay, Akin & Kenley, all of Wichita Falls, for appellees.

DUNKLIN, J. Charles Carson owned a tract of land in Archer county, and executed an oil and gas lease thereon to C. M. Taylor, J. L. Art, J. C. Straus, and C. B. Woods. The recited consideration in the lease was $1,000 cash paid, and the obligation of the lessees to pay $1,000 additional after the expiration of the first year of the lease, for a continuation of the same in full force for another year thereafter, in the absence of drilling operations. According to agreement between the lessees, each one was to pay one-fourth of the cash consideration and one-fourth of all subsequent amounts, and that they were to own the lease in equal portions.

This suit was instituted by Carson against all the lessees, to recover $1,000, the agreed consideration for the second year of the lease, all of the lessees being sued. Taylor filed no answer but wholly made default, and judgment was rendered in plaintiff's favor against him for the full amount of plaintiff's demand. But Art, Straus, and Woods, the other three defendants, filed an answer to plaintiff's suit and also a cross-action to recover of plaintiff $750, paid by them at the time the lease was executed. It was decreed that plaintiff take nothing of the defendants Art, Straus, and Woods, and that they recover of him the sum of $750, with legal interest, from the date of the execution of the lease. From that judgment the plaintiff has appealed.

The trial was before a jury whose verdict was rendered on special issues submitted.

According to allegations in the answer and cross-action filed by Art, Straus, and Woods, plaintiff and Taylor entered into a fraudulent conspiracy to induce them to take over the lease and pay $750 as their part of the recited consideration therefor. It was alleged, in substance, that Taylor fraudulently represented to his codefendants that he was paying to Carson $250, which was one-fourth of the cash consideration for the lease; that, as a matter of fact, he did give his check to Carson for that amount but that, in accordance with a prior agreement and conspiracy between him and Carson, Carson secretly, and without the knowledge of the other defendants, returned to Taylor his check, thereby aiding Taylor in deceiving his codefendants and inducing them to believe that Taylor was paying his equal pro rata part of the consideration; that Taylor was in fact the agent of Carson, ·to procure the money so paid by Taylor's codefendants, and that, therefore, Carson is liable for the consequences of such fraud. It was also alleged that, as a further inducement to appellees to take over the lease, Taylor and Carson fraudulently represented that a well which was then being drilled in close proximity to the land upon which Carson executed the lease had already struck oil and was then producing the same at the rate of 30 or 40 barrels per day, which representation was false and fraudulently made, and, in order to prevent an investigation on the part of appellees to determine whether or not that representation was true, further falsely and fraudulently represented that their information concerning the discovery of oil in that well had come through a confidential source, and that any investigation that might be made by appellees would result in a disclosure of a violation of confidence reposed in plaintiff and Taylor by the person giving the information; that, by reason of said representations and their belief in the truth of the same, appellees were prevented from making an investigation to learn whether or not said well was as represented, and believed the representations made by plaintiff and Tay-

lor that said well was, in fact, then producing oil in paying quantities, and that, but for such representations and the further belief that Taylor was paying his pro rata part of the cash consideration recited in the lease, appellees would not have accepted the lease and paid the plaintiff the $750 therefor. It was further alleged that the lease was at the time worthless. The fraud so alleged was urged as a defense to the cause of action asserted by the plaintiff, and also as a basis for recovery of the $750 paid to Carson by the appellees.

The following are the special issues submitted to the jury with their findings thereon:

"(1) Did the plaintiff Charles Carson represent to the defendant Straus that there was an oil well on plaintiff's land adjacent to the lease in question, which well was then good for 30 or 40 barrels of oil per day? Answer: No.

"(2) Did Charles Carson or C. M. Taylor, in the presence of Charles Carson represent to J. C. Straus before the execution of the lease in question, that the well on plaintiff's land would make 30 or 40 barrels of oil per day? Answer: No.

"(3) Did C. M. Taylor conceal from J. C. Straus his interest in the purchase money obtained by Carson for the lease in question at the time of and before the execution of said lease? Answer: Yes.

"(4) If you have answered special issue No. 3 'Yes,' then did Charles Carson know at the time that said C. M. Taylor was concealing his said interest in the purchase money to be obtained for said lease from the defendant Straus? Answer: Yes.

"(5) If you have answered special issue No. 4 'Yes,' then did Charles Carson do anything at that time to aid C. M. Taylor in concealing his said interest in such purchase money to be obtained for said lease from said Straus? Answer: Yes."

The proof showed, without controversy, that the well near the land covered by the lease was abandoned about one week after the lease was executed, for the reason that it came in dry. And, at the time of the trial, the lease in controversy had no market value. The lease was dated January 31, 1917, and this suit was instituted September 25, 1918, and defendants' plea in reconvention was filed May 26, 1920. The uncontroverted proof further showed that the lease was executed at night at Carson's home where Straus, representing himself and appellees Art and Woods, went at Taylor's instance, and with him, to close the trade. The trade was closed during that visit and Straus, for himself and the other appellees, paid to Carson $750. At the same time, and in the presence of Straus, Taylor gave Carson his check for $250, which was one-fourth of the cash consideration, but immediately thereafter plaintiff and Taylor went out of the presence of Straus and secretly, and without his knowledge, Carson returned to Taylor his check

for $250, and accepted from Taylor, in lieu thereof, a check for $50, to cover his one-fourth interest in the lease for the first year. The proof further shows that, after the lease was executed and the money paid by Straus, he, in company with Taylor, left Carson's home and returned to Wichita Falls, from whence they had started. On the return trip Taylor told Straus that he had, in fact, paid Carson only $50 as his pro rata part of the cash consideration, and, in that connection, admitted that he had not acted fairly with appellees, but had practiced deception upon them. Notwithstanding that information, appellees did not take any steps to rescind the trade or to recover the money so paid by them to Carson until this suit was filed.

On the trial appellant Carson testified without contradiction that, after he had executed the lease, he had several chances to lease the land for oil and gas, but he did not testify as to prices offered.

Under the facts just stated, appellant insists that the appellees should be denied the relief prayed for by them for reasons which may be briefly stated as follows: First, they were guilty of laches in asserting that claim for a period of more than two years, the statutory period fixed for the institution of suits for damages resulting from fraud and deceit, and especially since, during that period of delay, the circumstances have so changed that appellant cannot now be placed in statu quo, if the relief prayed for be granted; second, because, after appellees discovered the fraud, they waived any right to complain of it by acquiescence and by claiming under the lease and by failing to repudiate the transaction until after this suit was instituted.

We have reached the conclusion that none of those contentions can be sustained in this court because of plaintiff's failure to plead, as against defendants' demands, either the statute of limitation or the alleged laches of defendants in asserting any claim for relief by reason of the alleged fraud, or that appellees had waived their right to complain of the fraud or that they were estopped to assert that right.

Appellees' pleadings alleged the fraud in specific terms, and they pleaded such fraud, not only as a defense to plaintiff's suit, but also as a ground for recovery of the money paid out by them at the time the lease was executed. While the date the fraud was perpetrated was alleged, which, as noted above, was more than two years prior to the filing of appellees' pleading setting up the fraud relied on, there was no allegation of the date when appellees first discovered the fraud. Nor was there any allegation that appellees had, in any manner, elected to abide by the contract thereafter and thereby waive their right to complain of the fraud.

[1-3] The contentions now under discussion are special defenses to the relief sought by the appellees, and, if appellant desired to avail himself of them, he should have pleaded them. Although the proof recited above might have been available to sustain those special defenses, the same can avail appellant nothing in the absence of such pleading. According to the following authorities the defense of laches must be specially pleaded. Jackson v. Palmer, 52 Tex. 427; Vardeman v. Lawson, 17 Tex. 10; Dewitt v. Miller, 9 Tex. 239; Rutherford v. Carr, 99 Tex. 101, 87 S. W. 816. Even though waiver be established by proof without objection, effect cannot be given to the facts so proven, in the absence of a plea of waiver. Moody v. Rowland, 100 Tex. 363, 99 S. W. 1112; Ætna Insurance Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915; Scarbrough v. Alcorn, 74 Tex. 358, 12 S. W. 72; Murchison v. Mansur-Tibbetts Implement Co. (Tex. Civ. App.) 37 S. W. 605. And the same may be said of the defense of equitable estoppel as distinguished from waiver. Ross v. Moskowitz (Tex. Civ. App.) 95 S. W. 86; Texas Produce Co. v. Turner (Tex. Sup.) 27 S. W. 583; Word v. Marrs, 36 Tex. Civ. App. 637, 83 S. W. 17.

[4, 5] The fraud pleaded by appellees clearly was a good defense to the plaintiff's demand. The cross-action was based upon the same fraud, and we are unable to perceive any reason why full relief cannot be given to appellees for that fraud in one and the same suit, including a recovery of the money which they were induced to pay out at the time the lease was executed, as well as the defense against the cause of action asserted by plaintiff, since both were predicated upon the same transaction. Holland v. Western Bank & Trust Co., 56 Tex. Civ. App. 324, 118 S. W. 218, 119 S. W. 694; Du Bois v. Rooney, 82 Tex. 173, 17 S. W. 528. Indeed, damages sought in the cross-action were recoverable under the provisions of article 1330, V. S. Tex. Civ. Statutes, even though an objection had been made that the same could not be pleaded by way of reconvention in that suit, and the record here shows that no such exception was urged in the trial court. Bateman v. Hipp, 51 Tex. Civ. App. 405, 111 S. W. 971; Paschal v. Hudson (Tex. Civ. App.) 169 S. W. 911.

[6] The fraud practiced upon appellees by their codefendant Taylor, with the knowledge and consent of appellant Carson and with his assistance, was a sufficient basis for all the relief granted appellees by the judgment in the trial court. There was a fiduciary relation between Taylor and appellees in the matter of a joint acquisition of the lease on the land. Taylor owed to them the duty to deal fairly with them, and, when he falsely represented to them or led them to believe that they were on an equal footing with him

and that he was paying his equal pro rata part of the consideration for the lease, he was guilty of such fraud as entitled appellees to a rescission of the contract of purchase as between them, and, when that fraud was participated in and aided by appellant, the vendor, who thereby obtained from appellees $750 in money, together with their contract to make further payments for the lease in the future, the appellees were entitled to a rescission of the entire contract and full relief against appellant as well as against Taylor. The following authorities fully support this conclusion: Ryan v. Kahler (Tex. Civ. App.) 46 S. W. 71; Houts v. Scharbauer, 46 Tex. Civ. App. 605, 103 S. W. 679; Jines v. Astle (Tex. Civ. App.) 170 S. W. 1081.

The fraud found by the jury, which the evidence shows was one of the inducements causing appellees to purchase the lease from appellant, was of itself sufficient to warrant the relief decreed to the appellees without the necessity of a further finding establishing other fraud, which appellees alleged was a contributing cause of their injury. T. & P. Ry. Co. v. Jowers (Tex. Civ. App.) 110 S. W. 946; I. & G. N. Ry. Co. v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1189.

We are of the opinion, further, the judgment in favor of appellees is amply sustained by the evidence.

For the reasons noted, all assignments of error are overruled, and the judgment as between appellant and appellees is affirmed, but the judgment in favor of appellant against the defendant Taylor, of which no complaint is made, is left undisturbed.

On Motion for Rehearing.

The case of Du Bois v. Rooney, 82 Tex. 173, 17 S. W. 528, was a case similar to the present suit. In that case the plaintiff sought to recover the balance due upon defendant's contract for the purchase of cattle. The defendant answered, by a plea in reconvention, that, as a part of the contract relied upon by the plaintiffs, plaintiffs agreed to sell to the defendant 320 acres of land which plaintiffs represented they owned, and that the same had a valuable supply of water which the defendant desired for ranching purposes. In the plea in reconvention, it was alleged that the representations as to the title and quality of the land were false and fraudulently made by the plaintiffs; that plaintiffs owned no title to the land pointed out, and such fraud and deceit practiced by them was the basis of defendant's cross-action for damages against them. In disposing of that case the Supreme Court said:

"The rules that govern the settlement of the rights of the parties in actions for breach of the covenants of warranty and in equitable actions in which equitable relief is asked will

not govern and apply in this case. This case throughout as treated by the pleadings of both plaintiffs and the defendant presents only legal issues and is strictly the assertion of legal rights. The case made by the answer is one of deceit, in which the defendant seeks to hold the plaintiffs liable for the effects of the false representations and the fraud practiced upon him in the sale of land. Grabenheimer v. Blum, 63 Tex. 374, 378; 2 Pom. Eq. §§ 872, 897, and note; Brock v. Southwick, 10 Tex. 68; Walling v. Kinnard, 10 Tex. 512; Wheeler v. Boyd, 69 Tex. 298. If we treat the averments of the answer as speaking the truth, it presents a case in which the defendant, by reason of representations made by the plaintiffs about a subject-matter of the contract that was of such importance, was induced to enter into it. The effect of these representations, if true, were certainly calculated to induce the defendant to execute the contract and purchase of the Leoncita survey; and, when he ascertained they were false his right of action arose in damages for the results of plaintiffs' fraud. Pendarvis v. Gray, 41 Tex. 326; Culbertson v. Blanchard, 79 Tex. 486, and cases there cited; Wheeler v. Boyd, 69 Tex. 299."

In 12 R. C. L. p. 408, par. 154, the following is said:

"When a fraudulent transaction is sought to be enforced in the courts, the defendant may set up the fraud as either a complete or partial defense, as the case may be, or else in mitigation of damages or ground for recoupment."

And on page 409, par. 155, is the following:

"One who has been induced to enter into a contract by fraud may elect to retain what he has received under the contract, and bring an action to recover damages for the injury he has sustained from the deceit. Such an action is in the nature of an action on the case, and is denominated an action of deceit."

[7] Fraud, which induces the execution of a written contract is also a good defense to an action at law for the enforcement of the contract, even though the party defrauded also has the alternative right to equitable relief in a suit for cancellation or rescission of the contract. 9 Cyc. pp. 432, 433; 1 Daniel on Negotiable Instruments, par. 193, and numerous decisions there cited. In the present suit the fraud practiced by the plaintiff and which induced the appellees to purchase the lease was alleged both by way of defense to plaintiff's suit and as a basis for the plea in reconvention for damages. That was permissible, and no exception was urged to that form of the pleading. Northern Texas Traction Co. v. City of Polytechnic (Tex. Com. App.) 236 S. W. 73.

In Grabenheimer v. Blum, 63 Tex. 369, authorities were cited with approval to the effect that, after one who has been fraudulently induced to execute a contract discovers the fraud and fails to repudiate within a reasonable time and elects to abide by the contract and keeps what he has received under the contract, he thereby loses the benefit of the equitable relief of restoration to his former position, by having restitution of the consideration he has paid, but does not lose his legal remedy of damages for the deceit practiced.

In the present suit, appellees sought to recover upon their plea in reconvention the $750 paid to plaintiff at the time the lease was executed. The amount so claimed was not specifically designated as damages which appellees had sustained by reason of the fraud practiced upon them by the plaintiff, but such was clearly the legal import of the plea. Plaintiff addressed no exception to the plea presenting the contention that the amount paid out by them would not be the proper measure of appellees' damages for the deceit practiced, and no assignment of error has been presented here embodying that contention. Nor has appellant presented any assignment to the amount of appellees' recovery as being excessive; and under the circumstances stated, we cannot say as a conclusion of law that the amount of recovery awarded upon the plea in reconvention, as damages for the fraud practiced by the plaintiff, was erroneous simply because it was the same sum which was paid to the appellant by the appellees. Furthermore, it was conclusively shown upon the trial and the point is urged by appellant in briefs filed here that, at the time of the trial, the lease was absolutely worthless. Nor was any proof offered to show the market value of the lease between the date appellees discovered the fraud and the date of the trial.

According, appellant's motion for rehearing is overruled.