W. J. SCARBROUGH v. WM. ALCORN.

No. 6229.

1.    **Estoppel—Trespass to Try Title.**—Evidence of estoppel may be admitted in trespass to try title under the plea of not guilty.

2.    **Trial of Right of Property.**—In trials of right of property if the defendant claims ownership by virtue of an estoppel he must plead it and set forth the facts constituting the estoppel.

3.    **Parol Evidence.**—When the relation of creditor and debtor exists parol evidence may be admitted to show that a deed absolute on its face was by contemporane-

ous parol agreement intended as a mortgage to secure a debt, but when no such relation exists parol evidence, in the absence of fraud or mistake, is not admissible to show that when a written instrument was executed which by its unambiguous terms purported to convey absolutely the title it was agreed between the parties that it should be a conditional sale.

4. **Sale.**—Delivery of possession is not necessary to pass title to personal property when there is a valid sale.

5. **Sale—Trial of Right of Property.**—In the trial of the right of property, if the evidence shows that the title once vested it is not necessary to show that it was accompanied by possession.

6. **Practice.**—When it is apparent that the admission of improper evidence could not have affected the verdict and judgment, its admission can afford no ground for reversal.

APPEAL from Clay.   Tried below before Hon. B. F. Williams.
The opinion states the case.

*Swan & Bomar,* for appellant. —1.  The court erred in not setting the verdict of the jury aside for the reason that it was manifestly unsupported by the evidence in this, that the evidence shows that the defendant never did have any title to the property and that the same did belong to plaintiff.   On conditional sale of personal property.   Sinker, Davis & Co. v. Comparet, 62 Texas, 474; City Nat. Bank v. Tufts, 63 Texas, 113; Benj. on Sales, 311, 366, 342, 428–32.

2.   Parol evidence will not be admitted to vary the terms of or to contradict a written agreement.

3.   It is error to instruct a jury as to points that are neither pleaded nor proven in the case.   Texas Bank. and Ins. Co. v. Hutchins, 53 Texas, 61.

4.   To constitute an estoppel the acts or statements relied on must be shown to have had a direct influence upon the party claiming its benefit. Echols v. McKie, 60 Texas, 41; Scoby v. Sweatt, 28 Texas, 731; Watson v. Hewitt, 45 Texas, 472.

*Hazlewood & Templeton* and *R. D. Welborne,* for appellee. —1.  We submit that the evidence in this cause is sufficient to support the verdict of the jury and the judgment of the court, and under the evidence the verdict and judgment could not have been otherwise than for the appellee.

2.   If any of the evidence in this case shows that at the time of the sale of the cattle by appellant to Lindsay any interest in said cattle or lien of any kind was retained on said cattle adverse to Lindsay's rights, it was in witness J. M. Boon and not in appellant, and therefore appellant could not recover the property in controversy of appellee, and Boon would be estopped by his acts and conduct, having advised appellee to buy the cattle of Lindsay and accepted the benefits of said sale.   Big. on Estop., sec. 556; Fielding & Gwynn v. Dubose, 63 Texas, 631.

COLLARD, JUDGE.—It is well settled that in an action of trespass to try title, under a plea of not guilty the defendant may prove estoppel. McDow v. Rabb, 56 Texas, 162; Mayer v. Ramsey, 46 Texas, 371; Wright v. Doherty, 50 Texas, 34. In other cases it is the general rule that any affirmative defense must be specially pleaded. Smith v. Sherwood, 2 Texas, 461; Keeble v. Black, 4 Texas, 69; 12 Texas, 527.

The object of the law is to notify the adverse party of the character of the defense so that he may prepare to meet it. The common law rule is that an estoppel *in pais* does not have to be pleaded. Big. on Estop., 585. It has been the practice in this State to specially set it up, and it would be inconsistent with our system of pleadings as established by numerous decisions to hold that it is not necessary. Texas Banking Co. v. Hutchins, 53 Texas, 67, *et seq.*

The fact that this case is for the trial of the right of property will not change the rule. Plaintiff Scarbrough sued Lindsay and Boon for the cattle in controversy; sued out and had levied a writ of sequestration upon them, and defendant Alcorn claimed them under the statute, filing oath and bond. The issues made by plaintiff were as follows:

He alleges that long before and at the time his suit was brought and the writ levied he was the owner of the cattle; that Alcorn acquired his title from Lindsay; that it was acquired subsequent to his suit, with full knowledge of it; that plaintiff prosecuted his suit and recovered judgment for the cattle against Boon and Lindsay; that Alcorn and those under whom he claims confederated together to defraud plaintiff, and that they acquired possession of the cattle by wrongfully entering the pasture where they were upon their range, without authority, which possession was acquired after the suit was brought and after the writ was issued and placed in the hands of the sheriff, with full knowledge of the suit and the writ.

Defendant denied the allegations made by plaintiff; averred that the cattle were not subject to the levy of plaintiff's writ; that at the time of the levy and long before suit he was the owner and in the lawful possession of the cattle, and that plaintiff had no right to the same.

There is no hint of estoppel in these issues. The statute requires in cases of the trial of the right of property that the issues shall be made by the parties in writing by direction of the court. Rev. Stats., art. 4834. It also requires that the issues shall consist of a brief statement of the authority and right by which the plaintiff seeks to subject the property levied on to his writ, and of the nature of the defendant's claim. Rev. Stats., art. 4835.

The issue is not made by the claimant's affidavit; but, as was said in Wright v. Henderson, 10 Texas, 205, 206, "it is the duty of the court to direct an issue, in the formation of which the parties would be required

to set forth upon the record by pleading the facts in which their rights respectively consist."

Justice Stayton says in a case (State v. Bender, 68 Texas, 678) that "the purpose of an issue in these cases is the same as in other classes of cases, and it must be made before a case can be intelligently and fairly tried."

The statute itself requires that the nature of defendant's claim must be stated. If he claims ownership by virtue of an estoppel he has not complied with the statute until he has set it up and the facts which constitute the estoppel. The court should only try the issues made. We are of opinion the court erred, as claimed by appellant, in submitting to the jury questions of estoppel.

Alcorn claimed title under Lindsay and read in evidence a bill of sale, the substance of which is given in the statement of facts as follows: "A bill of sale dated July 14, 1884, executed by W. J. Scarbrough to C. R. Linday, absolute on its face, reciting a paid consideration of $3000, conveying 153 head of cattle, which bill of sale was duly acknowledged on the day of the execution and duly recorded in bill of sale record of Clay County on the 8th day of April, 1885." It was agreed that the 89 head of cattle levied on by plaintiff and claimed by defendant were included in the above bill of sale as well as in all other sales in evidence. Lindsay, on the 4th of November, 1884, by bill of sale conveyed to W. M. and E. W. Alcorn one-half interest in the cattle, estimating them at 205 head, guaranteeing to them 100 head of grown cattle to be delivered on the 1st of July, 1885. He delivered the cattle in controversy in four or five days afterwards. November 11, 1884, E. W. Alcorn sold her interest in the cattle to W. M. Alcorn.

In order to defeat the bill of sale to Lindsay evidence of a parol agreement was admitted, which, as to time and terms, is best stated in the language of the witness Boon, by whom, as well as plaintiff and one Pike, it was sought to be established. He says:

"When W. J. Scarbrough offered to sell the cattle he offered to give C. R. Lindsay one year's time on the price except $100, and to take witness as surety, and witness agreed to and did sign the note with Lindsay for $2900 under this agreement, viz., that the cattle were to be delivered to witness in his pasture and remain in his possession and control until said note was fully paid; that this agreement was made between him, Scarbrough, and Lindsay; that it was agreed and understood between them all that the title to the cattle as well as the possession was to remain in him until they were paid for, and unless Lindsay should pay the note he was to have no interest in or control of the cattle; and if Lindsay should fail to pay the note witness was to keep the cattle and pay for them, or sell them for the money and pay for them, or if he could do neither he was to turn them back to Scarbrough; that he refused to go on the note

and would not do so without the cattle were left in his possession; that the cattle were delivered to him by Scarbrough and two of his hands, Pike and Thompson, and he took them to his ranch and penned them and turned them in his pasture and kept them in his possession until sometime about the 1st of May, 1885."

Lindsay testified that no such contract in parol was made; that the cattle were delivered to him in Boon's pasture, where he kept them until he delivered them to the Alcorns.

After this, a month and some three days, Boon becoming dissatisfied with the condition of things wrote Scarbrough to send him a bill of sale for the cattle, which was done, dating the instrument back to the 14th of July, 1884, the date of the sale to Lindsay, the instrument reciting that it was made in consideration of $100 cash paid and the note of $2900 executed by Lindsay and Boon. We do not see how the parol agreement, as stated in Boon's evidence, could be set up in opposition to the absolute written conveyance made by Scarbrough to Lindsay. We can understand how a debtor can make a deed absolute on its face to his creditor, and by a contemporaneous parol agreement show that the conveyance was intended as a mortgage to secure the debt. Scarbrough was not a debtor or creating a debt against himself. He was making a sale in writing, by the terms of which the title to the property passed to Lindsay, and would not be in an attitude to set up the parol contract.

We can understand how a parol agreement could have been made between Lindsay and Boon that the title should be in the latter, and that he should hold possession of the cattle until the note was paid, or sell them and pay the note on which he was a security or which he was bound to pay, for this would be an independent contract from the sale; and it might be in a proper proceeding Scarbrough could himself take advantage of such an agreement between Lindsay and Boon, and in order to secure the payment of his note enforce the contract. But this is entirely different, as we understand it, from the object of the parol agreement as offered in evidence, which it seems was intended to bind all the parties and destroy the written sale of Scarbrough to Lindsay, make it a conditional sale, or place the title in one other than the vendee named in the written conveyance. In the absence of fraud or mistake a contemporaneous or precedent parol agreement can not be set up to vary or contradict the terms of a written agreement. Donley v. Bush, 44 Texas, 1; Bedwell v. Thompson, 25 Texas Supp., 245; Smith v. Garrett, 29 Texas, 48; 24 Texas, 643. Scarbrough did not sue Boon and Lindsay on his note, but for the cattle, and it appears that the title had effectually passed out of him by the conveyance to Lindsay, and if not by that then by his conveyance to Boon subsequently made. The burden was upon him to establish his ownership of the cattle (as they were levied on while in Alcorn's possession), and this he could not do if he had conveyed it to Lind-

say, from whom Alcorn claimed, or if he had conveyed it to Boon. The fact that he recovered final judgment against Boon and Lindsay for the cattle would be immaterial, because as between him and Alcorn their rights would be determined by the facts as they were at the time of the levy.

Plaintiff alleges that Alcorn acquired his title and possession of the cattle after his suit was brought. The evidence does not sustain this allegation. Scarbrough sold to Lindsay on the 14th day of July, 1884; Lindsay sold to the Alcorns on the 4th of November, 1884; E. W. Alcorn sold to W. M. Alcorn, the defendant, on the 11th day of November, 1885; plaintiff's suit was filed the 8th day of March, 1885. Delivery is not essential to pass title of personal property where there is a valid sale (1 Pars., 525, 529), and in a suit for the trial of the right of property ownership is the question to be tried; it is not bound to be accompanied by possession. White v. Jacobs, Bernheim & Co., 66 Texas, 464. If Scarbrough sold by valid conveyance to Lindsay his title, and, as before stated, if the parol agreement in evidence could not affect the written conveyance, the title passed to Lindsay and with it the right of possession. Alcorn claimed under Lindsay by valid conveyance, and as to possession Lindsay could deliver on the range or by pointing out the cattle.

Plaintiff claims that the sale to the Alcorns was executory and for only an undivided interest in the cattle. A sufficient answer to this, outside of what has been said of the sales by plaintiff to Lindsay and Boon, is that if Lindsay saw proper to deliver the cattle before the contract of sale required him to do so, it was legitimate for him to do so, and such a delivery would not vary the original agreement; it would only be a performance of it. If the parties accepted such change in its performance it would be valid between them. It appears that this was long before plaintiff's suit was brought and could in no wise affect him. He delivered specific cattle, and this was a partition as between them, of which plaintiff could not complain. Lindsay gave a guaranty in the bill of sale to deliver 100 head of cattle, and it does not appear that he delivered more. If he had delivered more, it was a transaction entirely between Lindsay and Alcorn, of which plaintiff could not complain. His rights were in no way affected by it. He could not recover from Alcorn unless he could recover from Lindsay.

There was no error affecting the rights of plaintiff, or if error it was harmless, in allowing Lindsay to testify that it was understood between him and the Alcorns at the time of his sale to them that the title should immediately pass, and that he guaranteed to them 100 head of cattle out of the number sold. The written contract guaranteed expressly the delivery of 100 head out of the number sold, and as before shown there was nothing destructive of the contract in performing it before the time stipulated therein.

On account of the error in submitting to the jury questions of estoppel not pleaded, we are of opinion the judgment of the lower court should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted June 18, 1889.