## CLIMBER MOTOR CORPORATION v. FORE et al. (No. 3072.)

(Court of Civil Appeals of Texas. Texarkana. May 14, 1925. Rehearing Denied May 21, 1925.)

1. **Principal and agent** ⚖100(4)—**Special sales agent cannot pledge goods placed in his hands for sale and bind principal, in absence of statutory authority.**

One who was merely a special sales agent had no power to pledge for his own indebtedness automobiles placed in his hands for sale and bind his principal, in absence of statute giving him authority to do so.

2. **Pledges** ⚖21—**Sales** ⚖234(3)—**One cannot give better title by sale or pledge than he has himself.**

None can give a better title to personal property by sale or pledge than he has himself.

3. **Principal and agent** ⚖150(2)—**Agent for one purpose only cannot bind his principal by another act.**

An agent for one purpose only cannot lawfully do another act and bind his principal.

4. **Warehousemen** ⚖17—**Owner's title to property held not divested by unauthorized act of agent in negotiating warehouse receipts in name of third person in payment of agent's personal indebtedness.**

Where special sales agent, in whose hands automobiles had been placed for sale, without authority or order of principal procured issuance of negotiable warehouse receipts in first instance, direct to and in name of third person, or its order, in payment of such agent's personal indebtedness, *held* that, under the Uniform Warehouse Receipt Act (Vernon's Ann. Civ. St. Supp. 1922, arts. 7827½t, 7827½tt), regardless of good faith on part of transferees of such receipts, true owner's rights were not cut off or diminished by transaction in question.

5. **Estoppel** ⚖110—**Equitable estoppel must be specially pleaded to be available as defense.**

Equitable estoppel, to be available as a defense, must be specially pleaded.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by the Climber Motor Corporation against R. M. Fore, the Dallas Storage & Warehouse Company, S. J. McFarland, and another, with cross-actions by defendant Warehouse Company and defendant McFarland against defendant Fore and against all parties to suit. Judgment entered in favor of defendant Warehouse Company and defendant McFarland against defendant Fore, with foreclosure of lien against all parties, subject to prior lien of defendant Warehouse Company, and that plaintiff take nothing, except as against defendant Fore, subject to judgments in favor of defendant Warehouse Company and defendant McFarland, from

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

which plaintiff appeals. Reversed and rendered.

The appellant, a corporation, brought the suit against the appellees R. M. Fore, the Dallas Storage & Warehouse Company, a corporation, the Security National Bank of Dallas, a banking corporation, and S. J. McFarland. The suit was to recover the possession of 15 automobiles alleged to be wrongfully withheld from appellant, the owner, or, in the alternative, for damages as for conversion. The appointment of a receiver was also asked for, to take charge of the automobiles during the litigation, and an order to that effect was made. The receiver sold the property, and the money is being held subject to the order of the court to take the place of the property itself.

The Security National Bank of Dallas disclaimed any and all interest in the automobiles or warehouse receipts, and pleaded general denial. The Dallas Storage & Warehouse Company answered, pleading that S. J. McFarland was the legal holder of warehouse receipts covering the specific automobiles deposited in the warehouse, and, by the terms of the receipts and of the law of the state, he, and not the appellant, was entitled to the possession of the automobiles sued for; and by cross-action sought to recover against R. M. Fore the amount of storage charges alleged to be due and unpaid, and for foreclosure of the lien for storage against all the parties to the suit. S. J. McFarland answered pleading that he was the legal holder of warehouse receipts duly issued by the Dallas Storage & Warehouse Company for the specific automobiles, and which were negotiated in the regular course of business by R. M. Fore to secure a series of notes executed by R. M. Fore, all of which were held by S. J. McFarland; and by cross-action sought to recover against R. M. Fore on the notes executed by him, and to foreclose his lien against all the parties. R. M. Fore made no answer, so far as the record shows.

The Climber Motor Company is a private corporation, organized under the laws of Arkansas and doing business in Little Rock, engaged in the manufacture and sale of automobiles and trucks. On September 1, 1920, the motor company sold to S. B. Murr, an automobile dealer in Port Arthur, Tex., six automobiles, and at about the same time sold to L. W. Judd, an automobile dealer in Dallas, Tex., nine automobiles. The terms of sale were cash on delivery at destination. These 15 automobiles are the ones in suit. It appears that when the automobiles shipped to the two parties mentioned arrived at their respective destinations, neither Mr. Judd nor Mr. Murr was financially able to pay for same, and therefore each of the parties agreed with the motor company to cancel the contracts of sale, which was mutually done, and the motor company to take possession of the property. It appears that Mr. Judd unloaded from the cars the nine automobiles shipped to him, and deposited them in the warehouse of the Dallas Storage & Warehouse Company, and took warehouse receipts for them. The warehouse receipts were issued in the name of Mr. Judd, and were to be delivered to him or his order. Mr. Judd indorsed the warehouse receipts in blank and delivered them to the Climber Motor Company. It appears, in respect to the six cars shipped to Mr. Murr, that the Climber Motor Company sent the bill of lading to appellee R. M. Fore at Dallas, Tex., with directions to have the six automobiles forwarded to Dallas for resale by him. The six automobiles were loaded in two cars. On instructions the railway company routed the two cars from Port Arthur to Dallas, with a large expense bill for demurrage and freight charges. The bill of lading recited, "Consignee, R. M. Fore," and, "Full name shipper, Climber Mot'r Company." On arrival of the two cars at Dallas Mr. Fore procured the Dallas Storage & Warehouse Company to pay the freight bill, which was done, and to place the six automobiles in storage, which was done. R. M. Fore, it appears, had previously entered into a written agreement with the Climber Motor Company, of date December 26, 1919, whereby he was to sell 2000 certain automobiles during 1920 at the compensation of $6 for each automobile sold, payable when the car was delivered and paid for. By the contract Fore was to sell the automobiles to dealers and at any place in the state of Texas. He was a sales agent, and not a dealer. It was expressly agreed "that the party of the first part is to receive his commission only on cars actually sold by him." The sale of the 15 automobiles was a special arrangement. As pertains to the particular automobiles in suit, the secretary of the motor company testified, as material:

"After these cars were stored in Dallas with the Dallas Storage & Warehouse Company, Mr. Fore was to place these cars with dealers, in Dallas or elsewhere in Texas, and that was the purpose of his being sent by the Climber Motor Company. They were turned over to Mr. Fore to resell them. At that time and after the cars had got to Dallas, they were in Mr. Fore's hands, that is, so far as the Climber Motor Company was concerned. The Climber Motor Company was at the time in possession of all the warehouse receipts. The Climber Motor Company never did sell these cars to Mr. Fore. We told Mr. Fore to come to Dallas and sell or place these cars with some dealer, and that we would pay his expenses, and also pay the expense incident to the handling of the cars, and in taking care of them. * * * We had the possession of the bills of lading covering the six cars until we turned them over to Mr. Fore. After that the warehouse receipts were turned over to Mr. Fore so that he could handle the cars."

The general manager of the Dallas Storage & Warehouse Company testified, as pertinent:

· "In June, 1920, the cars (nine) were carried on the books of the warehouse company in the name of L. W. Judd; the receipts were made to L. W. Judd, and the charge for the storage was made to the Climber Motor Company. In June, 1920, Mr. Fore came to me with the receipts for the Judd cars, and I then took up those receipts. I did not issue any receipts to Mr. Fore covering those cars—we simply stored the cars. The only charge on our ledger was a charge entered against the Climber Motor Corporation covering storage. We drew a draft on the Climber Motor Company for that month's storage and credited it, as directed by Mr. Fore. That charge was not made against the Climber Motor Corporation because I understood that company owned the cars, but it was because Mr. Fore told us to charge it to them. The charges were made to the Climber Motor Corporation, and the bills receipted to that company; Mr. Fore paid the charges and I billed it like he said. * * * I did not understand from Mr. Fore that the cars in fact belonged to the Climber Motor Company. I did not know anything about the arrangement that they had. The only thing I knew was he handled all the business for them. I did not know whose cars they were. Mr. Fore asked me to issue receipts to the Security National Bank, and I delivered them to my brother or Mr. Fore, and he delivered them to the bank. * * * There is a balance due of $1,313 on storage of these cars. * * * I am a brother of S. J. McFarland."·

It appears that R. M. Fore went to the Security National Bank of Dallas and applied for a loan of money, and represented to the vice president that he owned the cars in the warehouse, and wanted to establish his business as a dealer. The vice president afterwards phoned to the manager of the Dallas Storage & Warehouse Company and inquired respecting the cars, and was informed that the cars were there in storage, but the manager did not state who owned or claimed to be the owner of the property. Thereupon, it appears, the vice president undertook to effect a loan, and did so, for Mr. Fore through other banks outside of Dallas. Mr. Fore executed the six notes, aggregating $5,900, signed by himself and payable "to the order of myself," and reciting, "payable at the office of Security National Bank of Dallas, Texas." Mr. Fore indorsed each note in blank. Attached to each note and executed by Mr. Fore was a collateral agreement reciting:

"Having executed and delivered to Security National Bank, Dallas, Tex., the aforesaid promissory note, and for the purpose of securing the said note, do hereby pledge, transfer and deliver to said Bank or holder the following securities, to wit:" (describing them).

One note describes the securities as "6 Climber touring cars, represented by warehouse receipts of the Dallas Storage & Warehouse Company, with policies of insurance attached." The second note describes the securities as "six Climber touring cars, warehouse receipts are attached." The third note describes the securities as "'warehouse receipts Nos. 3802, 3803, 3804, covering car No. T–270, T–256, T–257, and T–269, Climber touring cars." The fourth note describes the security as "three Climber Motor Cars, value $3,600," and no warehouse receipts are mentioned. The fifth note describes the security as "three Climber touring cars, warehouse receipts Nos. 3809, 3811, and 3812." The sixth note recites the security as "three model T Climber cars, valued at $4,500," and no warehouse receipts are mentioned. At Mr. Fore's direction the Dallas Storage & Warehouse Company, through its general manager, issued the 15 warehouse receipts in the name of the "Security National Bank of Dallas, Texas, or order." On each warehouse receipt appears the indorsement, "Security Nat. Bank, by S. J. McFarland, V. P." On failure of Mr. Fore to pay the several notes at maturity, Mr. S. J. McFarland paid the holders thereof, and they indorsed the notes to him, and he is now the holder of the same, together with the securities attached.

The case was submitted to the jury on special issues. The special issues and the answers of the jury are substantially that (1) the reasonable market value of the automobiles was $1,000 each; (2) there was a breach of duty on the part of R. M. Fore in mortgaging or pledging the automobiles; (3) the several holders of the notes had no notice of such breach of duty by Fore; (4) there was a breach of duty on the part of R. M. Fore in negotiating the warehouse receipts; (5) the warehouse receipts "were not negotiated (to procure the loans) by either the owner of the receipts or a person to whom the possession and custody of the receipts had been entrusted by the owner"; but (6) "the receipts were negotiated to procure the loans by Security National Bank by S. J. McFarland, Vice President;" and (7) "the receipts in controversy were acquired in good faith, that is, honestly, by S. J. McFarland or the party or parties under whom he holds, for value, that is, as a pledge to secure a loan"; (8) there is due the Dallas Storage & Warehouse Company $10 a month for each car in storage from December 8, 1920; (9) R. M. Fore paid storage charges to the amount of $217, and no more, out of the loans made to him.

Upon the verdict and the evidence the court entered judgment in favor of the Dallas Storage & Warehouse Company for the amount of the storage due as against R. M. Fore, and a foreclosure of the warehouse lien as against the claim of all other parties; in favor of S. J. McFarland against R. M. Fore for the amount of the notes, with foreclosure of lien against the cars as

against all parties, but subject to the prior lien of the warehouse company; that the Climber Motor Company take nothing by its suit against the Security National Bank of Dallas, S. J. McFarland, and the Dallas Storage & Warehouse Company, but do recover against R. M. Fore damages to the value of the automobiles, and the proceeds from the sale of the cars in the hands of the receiver subject to the judgments in favor of the warehouse company and S. J. McFarland. The Climber Motor Company appeals from the judgment.

Tresp & Rawlins, of Dallas, for appellant.
Stennis & Stennis, of Dallas, for appellees.

LEVY, J. (after stating the facts as above.) The appellant moved for a judgment in its favor on the findings of the jury, and the court overruled the motion. The evidence in the case is practically undisputed, and the jury verdict merely reflects the admitted facts. The salient facts, admittedly shown, are here stated. The Climber Motor Company was the owner of the 15 automobiles in suit, and R. M. Fore was its special agent for the purpose only of effecting a sale thereof. The automobiles were placed in storage as the property of the Climber Motor Company, and were to remain there until sale could be made of them. Fore had authority to take them out of storage only for the purpose of making delivery to a purchaser or purchasers in case he effected a sale. Subsequent to the time of the storing of the automobiles, Fore, without authority or order from the Climber Motor Company, and without its knowledge, procured the Dallas Storage & Warehouse Company, in whose warehouse the automobiles were stored, to issue warehouse receipts for the automobiles direct to the Security National Bank of Dallas or its order. There were no outstanding warehouse receipts for the property at the time, and the Climber Motor Company never directed or authorized the Dallas Storage & Warehouse Company to issue warehouse receipts for the property. The purpose and intent of Fore, in the issuance and delivery of the warehouse receipts to the Security National Bank, was to secure the payment of certain promissory notes executed by him to his own order, and being his personal indebtedness. There was no sale of the warehouse receipts. The Security National Bank, through S. J. McFarland as vice president, indorsed in blank and delivered the warehouse receipts to the several note holders. Subsequently, upon failure of Fore to pay the notes, S. J. McFarland individually acquired the notes and the warehouse receipts given as security for the notes. He paid value for the notes with the security attached, and acquired them in good faith. The Dallas Storage & Warehouse Company, and likewise the Security National Bank, S. J. McFarland, and the holders of the notes, had no notice at the time of the issuance and delivery of the warehouse receipts that the Climber Motor Company was the owner of the automobiles.

[1-3] It is clear from the facts that Fore was, under his agreement with the Climber Motor Company, merely a special sales agent. As such, in the absence of a statute giving him authority so to do, he had no power to pledge for his own indebtedness the automobiles placed in his hands for sale and bind his principal. It is the established common-law rule that none can give a better title to personal property by sale or pledge than he has himself. Bank v. Bank & Trust Co., 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25; Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857; 31 Cyc. p. 794; Jones on Pledges and Collateral Securities (2d Ed.) § 53, p. 56; Pelosi v. Bugbee, 217 Mass. 579, 105 N. E. 222. And it is the fundamental rule that an agent for one purpose only cannot lawfully do another act and bind his principal. Mechem, Agency, §§ 323, 361. Therefore, if the pledge in the present case was valid it must be upon the ground that it was made by a person having the indicia of title, the constructive possession and the right to make sale and delivery of the property.

[4] This proposition is based upon either estoppel in pais or the protection afforded by the Uniform Warehouse Receipts Act as provided in the statute. Estoppel in pais, independent of the Warehouse Receipts Act, was not pleaded, and therefore the appellees cannot avail themselves of an equitable estoppel in order to defeat the appellant's claim. Scarbrough v. Alcorn, 74 Tex. 358, 12 S. W. 72; and many other cases. And the special facts do not bring the case within the terms of the Warehouse Receipts Act. The record admittedly shows that the transaction, as between Fore and the Climber Motor Company as well as all the other parties, was not in fact the pledge by Fore of a negotiable warehouse receipt issued in the name of the Climber Motor Company. Nor did the Climber Motor Company entrust Fore with the warehouse receipts issued without its authority to the Security National Bank. Fore himself, and without authority or order, procured the issuance of the warehouse receipts in the first instance direct to and in the name of the Security National Bank or its order. This expedient was adopted by Fore to permit the Security National Bank to have custody or possession of warehouse receipts running to the order of the latter. Consequently, it was through the action of Fore alone and the apparent title the warehouse receipts created in the Security National Bank that the holders of the notes were led to advance Fore the money upon the faith of the documents of title.

Were the true owner's rights cut off or diminished by the form the transaction took in this particular instance, there being good faith on the part of the appellees in the transaction?

It is plain that it is the intention of the Warehouse Act to facilitate the use of warehouse receipts as documents of title, and to protect a bona fide purchaser for value to whom the receipts have been negotiated, despite breaches of trust or violations of agreement on the part of the person making the negotiation as the apparent owner. But it is equally as clear that it was not the intention and purpose of the act that the rights of the owner of the property should necessarily be divested or diminished because another wrongfully procures the issuance and negotiation of a warehouse receipt for the property in the name of a third person. The persons who may negotiate the receipt, according to the act, are "(a) the owner thereof" or "(b) person to whom the possession or custody of the receipt has been entrusted by the owner," if the receipt is in the form prescribed. Article 7827½t, Vernon's Ann. Civ. St. Supp. 1922. As seen, only "the owner" or a "person to whom the possession or custody of the receipt has been entrusted by the owner" is included within the description of those who may "negotiate" a warehouse receipt. And a person to whom a warehouse receipt has been negotiated acquires thereby such title to the goods as "the person negotiating the receipt" or "the depositor" or the "person to whose order the goods were to be delivered by the terms of the receipt," according to the circumstances, "had ability to convey to a purchaser in good faith for value." Article 7827½tt. The purchaser does not, as seen, take any greater or better title to the goods than the persons included within the description "had ability to convey."

[5] Hence, regardless of the good faith on the part of the appellees in this transaction, the true owner's rights were not cut off or diminished by the form the transaction took, according to the provisions of the Warehouse Act. The transferee, in order to take advantage of the negotiability granted by the act, must show not only that the instrument is negotiable, but that it was negotiated according to the provisions of the statute; and if this is not done the rights of the transferee will be governed, as the case might be, by independent rules of law. The true owner may be estopped to set up his title to the property when he has permitted another to hold himself out as the owner, or clothed him with indicia of title to the prejudice of an innocent person. But equitable estoppel, to be available as a defense, must be specially pleaded. The distinction is substantial between the situation where the principal, as here, entrusts personal property to his agent for the purpose of storage and making the sale of the property itself, and the situation where the owner of goods entrusts a negotiable warehouse receipt to the agent, and he negotiates the same to an innocent purchaser.

While it is alleged that the indebtedness for which the notes were given was for storage, freight, and demurrage charges, the evidence does not so show, and the jury findings were that none of the loans made to Fore went to reimburse the Dallas Storage and Warehouse Company except "$217." The evidence is uncontradicted, however, that the Climber Motor Company itself, "sent Mr. Fore the money to pay that bill" (the $217). Mr. McFarland stated, in his letter of January 28, 1921, to Climber Motor Company:

"While I do not know any of the particulars, my understanding is that the money advanced to Mr. Fore is for the purpose of paying freight, demurrage and storage charges in connection with the unloading of the cars and placing them in the warehouse. Whether or not I am correctly informed as to this I do not know, but that is my impression."

While a witness on the stand, though, Mr. McFarland gave no testimony along that line.

We conclude that the judgment should be reversed, and that judgment should be here rendered as follows: The Climber Motor Company to recover the possession of the 15 automobiles, represented by the proceeds of sale in the hands of the receiver, subject to the storage charges of the Dallas Storage & Warehouse Company, to the extent of $1,994.50, less credits made of $1,119.50, being $10 per month for each automobile to March 31, 1922; the receiver is ordered to pay over to the Dallas Storage & Warehouse Company out of the proceeds of the sale the sum of $1,994.50 less credits made of $1,119.50, and then to pay over to the Climber Motor Company through its receiver all the balance of the proceeds of sale, of $5,052; the Dallas Storage and Warehouse Company and S. J. McFarland each to recover on their cross-action against R. M. Fore the claims sued on, but without foreclosure of liens on the automobiles; the Security National Bank, S. J. McFarland, and R. M. Fore and the Dallas Storage & Warehouse Company to pay the costs of the trial court; the Security National Bank and S. J. McFarland to pay the costs of appeal.