**DUNAGAN et al. v. GRIFFIN.**

No. 14211.

Court of Civil Appeals of Texas. Fort Worth.

April 18, 1941.

Rehearing Denied May 23, 1941.

Currie McCutcheon, Bruce Graham, and Marie McCutcheon, all of Dallas, for appellants.

J. Rob Griffin, of Fort Worth, for appellee Griffin.

Henry Bishop, of Fort Worth, for appellee Whitehead.

W. F. Young, of Fort Worth, for appellee Fort Worth Warehouse & Storage Co.

SPEER, Justice.

H. B. Dunagan, doing business as Dunagan Brothers, plaintiff, sued H. G. Whitehead and Fort Worth Warehouse & Storage Company, defendants, in Tarrant County Court at Law No. 1, to recover possession of 499 cases of beer, valued at $850.

Plaintiff alleged that on about July 10th, 1939, he employed Whitehead to haul the beer from Houston to Big Springs, Texas, and gave him a check payable to Gulf Brewing Company, with which to pay for the beer when received from the Brewing Company. That Whitehead went to Houston, received the beer on his truck and delivered the check in payment. That Whitehead hauled the merchandise to Fort Worth, Texas, stored it in the warehouse of the defendant Storage Company, and received a warehouse receipt therefor in his own name; that the beer belonged to plaintiff and defendants had failed and refused to deliver to him his said property. Plaintiff prayed for the possession of the beer, and in the alternative, for judgment against the defendants jointly and severally for its value, alleged to be $850, and for general and special relief.

Whitehead answered by general denial and the Warehouse Company answered by general denial and specially that it was a corporation operating under the laws of the State of Texas, doing a warehouse business; that it received the beer from Whitehead and issued its negotiable warehouse receipt therefor and was informed that J. Rob Griffin was the then owner and holder of the receipt and prayed that Griffin be interpleaded in the action and for general relief.

On October 30th, 1939, plaintiff procured and caused to be executed his writ of sequestration, under which the officer took the beer into his possession. Defendants having failed to replevy within ten days, the plaintiff filed the necessary bond and replevied the goods from the officer's custody.

On May 8th, 1940, Griffin filed his intervention against Dunagan Brothers, a firm composed of H. B. Dunagan and ——— Dunagan, jointly and severally, and against Lawyers' Lloyds of Texas, surety on plaintiff's replevin bond. Griffin alleged that he held the endorsed warehouse receipt for the beer; that on July 14th, 1939, he loaned Whitehead certain moneys and took his note for $730.40, due in ninety days, and attached thereto was the endorsed warehouse receipt, as security for the payment of the note; that the note was past due and unpaid and because thereof, he was the owner and holder of said receipt, entitling him to possession of and title to the beer. Intervener alleged that he acquired the warehouse receipt for a valuable consideration, without notice of any vice in the transaction, if any existed; that he was an innocent purchaser thereof and entitled to the beer represented by the warehouse receipt, as against plaintiff, the Warehouse Company or Whitehead; that he was informed and believed plaintiffs had taken the property under sequestration and replevin bonds, and disposed of it, and had in their possession the value thereof; that Lawyers' Lloyds of Texas was the surety on the replevin bond, and alternatively judgment was sought against all for the value of the beer.

Trial was had to the court, without a jury, and judgment entered in favor of intervener Griffin against H. B. Dunagan, John C. Dunagan, H. G. Whitehead and Lawyers' Lloyds of Texas, jointly and severally, for $785.15. The judgment recited that all other relief prayed for by the parties was denied. From this judgment all parties against whom judgment was entered except Whitehead, have appealed.

Several points are raised by appellants, but in the view we take of the record it is only necessary to notice two, namely: the jurisdictional amount in controversy and the contention that judgment should have been rendered for plaintiff H. B. Dunagan and not for Griffin, the intervener, as was done.

As we understand this controversy, the bone of contention is who is the owner of the 499 cases of beer and entitled to its possession or its value, which value, ob-

viously, did not exceed $850. We do not believe $1,700 was involved because both plaintiff and intervener claimed it. The value of the beer was well within the jurisdiction of the trial court, and therefore this court has jurisdiction of the appeal.

There is no conflict worthy of mention in the testimony offered by the parties. Its effect and application to the principles of law involved are controlling here. To avoid repetitions, it may be said that there is substantial testimony in the record to support the pleadings of the respective parties, the substance of which we have already stated. It is significant also that neither party testified to any fact which would contradict what the other testified to.

In the judgment that was entered, the court found as existing facts, and they are supported by the testimony, that: (a) Whitehead made a trade with H. B. Dunagan to haul beer from Houston and deliver it to plaintiffs' warehouses at Midland and Big Springs, Texas; (b) Whitehead had and operated under a permit from the State as a wholesale beer distributor, and that this fact was known to intervener; (c) just prior to the performance by Whitehead of his contract to haul the beer, he caused a bill of sale and transfer of his truck license to be issued to Dunagan Brothers, and in furtherance of a scheme between them to deceive the public and intervener, as to the real ownership of the truck, failed to place such bill of sale and transfer of record, as required by law; (d) the transaction just detailed was in violation of the rules and regulations of the Interstate Commerce Commission and the Liquor Control Board of Texas; (e) Whitehead was lawfully in possession of the beer and delivered it to the Fort Worth Warehouse & Storage Company, received a negotiable warehouse receipt therefor and transferred same to J. Rob Griffin (intervener) for a valuable consideration, and Griffin became an innocent holder of the receipt, for value, to secure a debt of $730.40; and (f) Griffin's debt is past due and unpaid, plaintiff having obtained possession of and sold the beer, Griffin is entitled to recover against Dunagan Brothers and the surety on their replevin bond the amount of his debt, which is less than the value of the beer. Upon these findings of fact, the judgment was entered for Griffin.

It is evident to our minds that the trial court rendered judgment against H. B. Dunagan, the plaintiff, for one or all of three reasons disclosed by his finding of facts in the judgment. They are because: (1) of the unlawful attempt of Whitehead to transfer the title of his truck to Dunagan, (2) the contract between Dunagan and Whitehead for the transportation of the beer was void because in violation of the rules of the Interstate Commerce Commission and the Texas Liquor Control Board, and (3) the title to the beer was not in H. B. Dunagan when stored by Whitehead at Fort Worth.

It would have been improper to deny Dunagan's recovery because of the attempted transfer of the truck to him by Whitehead. If this suit had involved the enforcement or breach of the attempted contract of sale and transfer, the means employed to effectuate the transfer would be material; but that is not the case before us, and we find it unnecessary to pass upon the validity of that transfer. It was indisputably shown that the beer to be transported was not an interstate shipment, and the rules of the Interstate Commerce Commission would not be controlling. It is perceivable that regulations of the Railroad Commission referable to common carriers could be considered in connection with the deal, but again we find that question was not raised in the court's findings and therefore could not have been a ground upon which he based judgment; we know of no rule of the Texas Liquor Control Act, Vernon's Ann.P.C. art. 666—1 et seq., which would invalidate the contract between the parties for the transportation of the beer by Whitehead. The record is not clear as to H. B. Dunagan's manner of conducting his business. He testified that he was doing business under the trade name of Dunagan Brothers; that he and his brother, John C. Dunagan, owned several different kinds of permits and operated about eight warehouses at different distributing points, but that the particular beer in controversy was paid for by his check and belonged to him individually. These matters were undisputed by any witness. No effort was made by any one to show that any other person than plaintiff owned the beer, and it is difficult for us to see upon what grounds the court could have found to the contrary.

Without contradiction, the record shows that H. B. Dunagan employed Whitehead

to haul the beer from Houston to Big Springs; that before Whitehead left to make the trip, Dunagan gave him a check payable to Gulf Brewing Co., at Houston, for $850, the price of the 500 cases to be hauled; the check was signed, "Midland Bottling Co., by H. B. Dunagan." The beer was loaded onto Whitehead's truck at Houston and the check was delivered to the Brewing Co. It was later cleared and Dunagan's local bank paid the check. The Brewing Co. billed the beer to John C. Dunagan, Big Springs, Texas. H. B. Dunagan testified that his brother, John C., was in charge of the warehouse at that place and it is supposed that the Brewing Co. knew this and billed it in the brother's name.

■ We think these undisputed facts would force the conclusion that the beer belonged to H. B. Dunagan, or to Dunagan Brothers, a trade name under which H. B. Dunagan testified without contradiction that he did business. It is certain that there is nothing in the record to indicate that Whitehead owned or had any interest in the title to the beer being transported by him. Whitehead did not testify in the case. It is true, of course, that Whitehead was in possession of the beer when he stored it at Fort Worth with the warehouse company. But, "The mere entrusting of chattels to another—either as agent, bailee or otherwise—is not sufficient to warrant an assumption that the person in possession is the owner or has authority to make disposition." 2 Tex.Jur., page 435, sect. 46.

H. B. Dunagan further testified that within a few days after he had sent Whitehead to Houston for the beer, the latter came into his place of business at Midland and said the beer was being unloaded at his (H. B. Dunagan's) Big Springs warehouse and asked for $100 in payment of the freight on the load; that he made a check payable to Whitehead and delivered it to him, that the check was endorsed and paid by the bank; Dunagan later qualified his statement by saying he was not sure whether it was Whitehead who called or whether it was some other person.

On July 10th, 1939, Dunagan received a telegram, dated at Fort Worth, Texas, addressed, worded and signed as follows: "Dunagan Brothers, care of H. B. Dunagan: I am holding five hundred cases of beer pending settlement on empties delivered Gulf Brewing Co. from you am notifying all parties concerned. H. G. Whitehead."

Thirty or sixty days later, H. B. Dunagan learned that the beer was stored by Whitehead with Fort Worth Warehouse & Storage Company, and promptly instituted this suit.

The uncontradicted testimony of J. Rob Griffin, intervener, discloses that he acquired the warehouse receipt from Whitehead, at the time, in the manner and for the purposes as set out in his pleadings, the substance of which we have already related. He also testified that Whitehead was indebted to him in the sum of approximately $1,000, for professional services rendered in matters other than those involved in this case; that in this transaction, he took Whitehead's note for $730.40, secured by the warehouse receipt, went to a local bank and borrowed the money on his own note and attached Whitehead's note and the receipt to his own at the bank; that when the Whitehead note was due the bank demanded payment of him (Griffin) and he paid the bank; that Whitehead's note was still past due and unpaid.

The controlling questions in this appeal, as we see them, are: (1) Who was the real owner of the beer when it was stored by Whitehead at Fort Worth, and (2) What rights to the beer did Griffin, the intervener, acquire when he, in good faith, without notice of any vice in the title, took the negotiable warehouse receipt to secure his indebtedness from Whitehead?

No issue is made in this case that the Warehouse Company was not duly authorized by law to operate as such. It becomes necessary then to notice some of the principles controlled by our "Uniform Warehouse Receipts Act." These are found in Articles 5612 to 5663, R.C.S., both inclusive, Vernon's Ann.Civ.St. arts. 5612–5663. The receipt here involved was a negotiable one, as provided by Art. 5616. Whitehead procured the receipt from the Warehouse Company and negotiated it to Griffin. From the provisions of Article 5652, we may ascertain what rights to the stored property Griffin acquired when he became the owner of the receipt; that Article reads:

"A person to whom a negotiable receipt had been duly negotiated acquires thereby:

"1. Such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in

good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value, and

"2. [Pertains to the duty of the warehouseman]."

■ Whitehead could not, by the negotiation to intervener of the warehouse receipt, pass any better title to the beer than he, Whitehead, had in it. It must follow that intervener acquired no better right or title to the goods than Whitehead had when he stored them. Climber Motor Corp. v. Fore, Tex.Civ.App., 273 S.W. 284, writ dismissed. There is not a line of testimony in the record tending to show that Whitehead owned the beer, or any part of it, at any time. He was in possession of it, but, as explained by the testimony of Dunagan, his possession was only by virtue of his contract to haul it from Houston to Big Springs, Texas. Whether Whitehead was an agent of Dunagan for the purpose of its transportation or whether he was an independent contractor for that purpose would not give him any interest in the title to the beer. If Whitehead was the agent of Dunagan, or Dunagan Brothers, whoever they may be, and his agency was for the purpose of transporting the beer, he could not lawfully do some other act, such as to dispose of the beer, and bind his principal. Of course, conditions could arise which would estop his principal from repudiating the agent's acts, but estoppel is a defense which must be pleaded and there is no such contention made in this case. See Scarbrough v. Alcorn, 74 Tex. 358, 12 S.W. 72.

■ By Art. 5649, it is provided that a negotiable receipt may be negotiated by the owner thereof, or by any person to whom the custody of the receipt has been entrusted by the owner. When Whitehead negotiated the receipt to intervener, the latter received only such title to the property represented by the receipt as Whitehead could have conveyed to a purchaser of the goods, in good faith, for value. We can perceive of no hypothesis upon which Whitehead could have, under the facts of this case, sold and passed good title to the beer to a purchaser in good faith for value. And by the same token, he could not so insulate himself by storing the goods, procuring a warehouse receipt therefor, negotiate it to intervener, and pass the title. Regardless of the good faith of the intervener in acquiring the receipt, under the circumstances in this case, we do not believe the true owner's rights were cut off to repossess his or their property. Climber Motor Corp. v. Fore et al., Tex. Civ.App., 273 S.W. 284, writ dismissed. To the same effect are the announcements of the rule found in 41 Tex.Jur., page 12 sect. 7; 37 Tex.Jur., page 494, sect. 224; 2 Tex.Jur., page 557, sect. 152.

■ In the last-cited authority, the rule is stated to be: "Where an agent makes an unauthorized disposition of his principal's property, it may ordinarily be recovered from any person into whose hands it may come so long as it can be identified."

■ We do not think that the fact that a warehouse receipt is made negotiable would alter the equitable principle announced. The negotiability of a warehouse receipt does not embrace the broad elements given by law to many other kinds of negotiable instruments. The distinction is drawn by the rule announced in 6 Tex. Jur., page 612, sect. 21, where it is said: "They (warehouse receipts) are rather regarded as representatives of the property covered by them. Such instruments are negotiable only in the sense that they readily pass from hand to hand. They lack the quality of negotiability, which as against an innocent party holding for value, precludes the owner from denying that the property represented by them was received."

■ Other jurisdictions adhere to the principles announced above relating to an unlawful disposition made by a bailee of his principal's property. In 67 C.J., page 472, sect. 48, it is said: "The issue of a warehouse receipt to a bailor for goods to which he has no title conveys no title to the goods as against the true owner, either to the bailor or to his assigns, and this rule applies although the warehouse receipt is, by statute, made negotiable."

In Ruling Case Law, Vol. 27, page 974, sect. 30, this rule is announced: "The rights of the owner of personal property are not necessarily divested because another having possession thereof wrongfully deposits it in a warehouse and then transfers the receipt to a third person for value. Even under warehouse acts, where one has fraudulently deposited the goods of another, the true owner does not generally lose his property by the negotiation of the warehouse receipt. * * * The true owner

of the property may, however, be estopped to set up his title where he has permitted another to hold himself out as the owner, to the prejudice of an innocent person."

We have concluded and so hold that, under the undisputed facts shown and found by the trial court, when applied to the law applicable, the court erred in entering judgment for intervener, J. Rob Griffin, against H. B. Dunagan, John C. Dunagan and Lawyers' Lloyds of Texas, jointly and severally, for the amount of intervener's debt against H. G. Whitehead. The case appears to have been fully developed upon the trial. The rights of the several parties appear to be plain to us and it therefore becomes our duty to dispose of the subject matter in issue in respect to the rights of the parties involved.

It is stipulated in the record that H. B. Dunagan has heretofore acquired the 499 cases of beer in controversy under sequestration and replevin and still holds it or its value; that none of the parties, at the time of trial, sought any relief against the Fort Worth Warehouse & Storage Company, and the judgment that should have been entered by the trial court, and the one to be entered by us, should take no further cognizance of the warehouse company.

H. G. Whitehead perfected no appeal from the judgment entered and that part of the judgment against him in favor of intervener, J. Rob Griffin, for $785.16, plus interest at ten per cent per annum thereafter, and costs of the suit below, is left undisturbed. The judgment of the trial court is reversed insofar as it awarded to intervener, J. Rob Griffin, a recovery against H. B. Dunagan and John C. Dunagan, trading as Dunagan Brothers, and Lawyers' Lloyds of Texas. Judgment is here rendered that intervener, J. Rob Griffin, take nothing in his intervention against H. B. Dunagan, John C. Dunagan or Lawyers' Lloyds of Texas, or either of them. It is the further judgment of this court that plaintiff H. B. Dunagan, doing business in the trade name of Dunagan Brothers, recover of and from H. G. Whitehead and intervener J. Rob Griffin the title to and the right to possession of the 499 cases of beer in controversy, together with all costs incurred in the trial court; and against intervener J. Rob Griffin all costs of this appeal. For the enforcement of this judgment, all parties to whom relief is awarded and the officers

of both courts may have their execution. Judgment of the trial court left undisturbed in part, and reversed and rendered in part.